## Owen Fargusson *vs.* Frank S. Talcott, *et al.*

Opinion filed December 7th, 1897

### Vendor and Purchaser—Forfeiture—Waiver.

Where the vendor in the contract for the sale of real property is required by the terms thereof to give written notice to the vendee of his election to treat the contract as terminated on failure of the vendee to pay at the time specified therein, time being declared to be of the essence of the agreement, such vendor must act with diligence in giving such notice, or he will be deemed to have waived his right to insist that the vendee has lost his rights in equity on account of such breach. Under the facts of this case, the vendor is held to have waived his rights to insist upon a termination of the contract by waiting for three months before giving the notice.

### Contract Construed.

Contract construed, and *held* to contain no provision which overrides the clause which declares that time shall be of the essence thereof.

### Time of Performance—Time Essence of Contract.

An agreement that time shall be of the essence need not be in any particular form. Such an agreement will be enforced in a court of equity as well as a court of law; and, if the party fails to perform at the time stipulated, the other party may treat the contract as at an end for all purposes, and thereafter no court will declare specific performance thereof. But, even after such a default, the one who was not guilty of it may waive his right to treat the contract as at an end.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Owen Fargusson against Frank S. Talcott and Gertrude S. Talcott, to determine adverse claims to real property. From a judgment directing plaintiff to execute to defendants a warranty deed on their payment to him of the amount found, the plaintiff appeals.

Modified.

*John E. Greene*, for appellant.

Evidence of the practical construction given to a contract by the parties thereto in their dealings under it may be considered in determining a proper construction. *Hosmer* v. *McDonald*, 49 N. W. Rep. 112; *First Nat. Bank* v. *Jagger*, 41 Minn. 308, 43 N. W. Rep. 70.

*Leonard A. Rose*, for respondent.

Where the time for the delivery of the deed has arrived, the action of the vendor is for specific performance. *Shelley* v. *Mikkelson*, 5 N. D. 22, 68 N. W. Rep. 213. Conditions will always be construed so as to save a forfeiture if it can fairly be done. Martindale Conv. 292. Respondents offer to do equity—taxes are paid and they tender the purchase price. *Curtis* v. *Gritz*, 58 N. W. Rep. 883. That clause of the contract which says: "Time is of the essence of the contract" has been waived by appellants accepting interest on delayed payments and his failure to forfeit in time. *Merriam* v. *Goodlett*, 54 N. W. Rep. 686; *Robinson* v. *Trufant*, 56 N. W. Rep. 769; *Ganghan* v. *Kerr*, 68 N. W. Rep. 694. An action will lie to foreclose the rights of the purchaser in a contract for real estate and the decree will direct that

the purchaser comply with the terms of his contract within a reasonable time to be named therein or the premises be sold. *Gardels* v. *Kloke*, 54 N. W. Rep. 834.

CORLISS, C. J. In this action instituted to determine adverse claims to real property under § 5904, Rev. Codes, the defendants have set up an equitable interest in the land involved by virtue of a written contract with the plaintiff for the purchase thereof, and pray that the court decree specific performance of such agreement. There is practically no controversy about the facts. The land agreed to be sold consisted of a whole section. The contract was made in the spring of 1892. The purchase price was to be paid by the delivery to the plaintiff of 15,000 bushels of No. 1 Northern wheat, 3,000 bushels thereof to be delivered on or before October 15, 1892, and 4,000 bushels on or before October 15th in each of the next three succeeding years. The place of delivery was the town of Buffalo, in the County of Cass, in this state. For a failure to deliver the full amount specified in any year the defendants were not to lose their rights under the contract, but were to pay interest on the deficiency; it being the obvious purpose of the parties that the payment of such deficiency should be deferred until the next season, when it should be made good, with interest thereon at 7 per cent. But it was undoubtedly the understanding of the parties that at least one-third of the crop raised on the land in each year should be delivered by the defendants to enable them to escape the consequences in equity of a default. To insure a reasonable payment each year, the defendants bound themselves to crop at least 400 acres every season. Time was declared to be of the essence of the contract, and a clause commonly spoken of in cases of this kind as a forfeiture clause was inserted therein. The mere failure of the defendants punctually to comply with the terms of the contract was not of itself to work the termination thereof, but only after a written notice served upon the defendants in a particular manner had been given was the agreement to cease to be of further binding effect. Under this contract the defendants entered upon the possession of the

land in the spring of 1892, and have been in the possession thereof ever since. In 1892, 1893, and 1894 they delivered more than one-third of the crop raised upon the farm, but did not in any of these years deliver the specified number of bushels; *i. e.* 3,000 bushels in 1892, 4,000 bushels in 1893, and 4,000 bushels in 1894. Whether defendants violated their contract in those years is immaterial, for it is undisputed that they were permitted by the plaintiff to farm the land in 1895, and this was a waiver of all prior breaches. But in 1895 no wheat whatever was delivered by the defendants, nor did they during this season in any manner communicate with the plaintiff explaining their failure to perform or asking further time, although they in fact raised that year 3,000 bushels of wheat upon this land. Had plaintiff promptly given the defendants the notice required by the contract, that he elected to treat it as at an end because of their violation of its obligations, his position would have been unassailable. It is evident that time was of the essence of the contract with reference to the delivery of one-third of the wheat raised each year. No extension of time as to a deficiency arising from a failure to deliver one-third of the grain in any year is contemplated so far as such deficiency is concerned. With respect to that amount of wheat, time was of the essence of the contract. But, if one-third was delivered, the failure to deliver the specified number of bushels was not to put the defendants at the mercy of the plaintiff, but would only render them liable for interest thereon because the payment was not made at a particular time. The general principles which govern the decision of this case are well settled. In equity time is not ordinarily regarded as an essential element in a contract. But the parties may make it so by express agreement. This was done by the terms of the contract here involved. It is true that there is an express agreement that, for failure to comply with the provisions of the contract, the defendants shall be liable in damages. But this did not in any manner qualify the clause making time of the essence. In the absence of a stipulation that time shall be of the essence of the

contract, a failure to perform on the exact day named will not work the destruction in a court of equity of the rights of the party who is dilatory in the fulfillment of his promise. In equity he may, despite this default, have specific performance. If, however, he agrees that time shall be of the essence of the agreement, he waives his right to invoke equitable protection. But the fact that he has no standing in a court of equity to excuse his default furnishes no argument to permit him to escape the consequences of his default in a court of law. The same breach of the contract which destroys his rights in equity also renders him liable for damages in a court of law. Inserting a provision that such liability shall exist adds nothing to it. Neither should it be taken as evincing a purpose to nullify the explicit language of the contract that time is of the essence thereof. Construed as a whole, the agreement in this case merely contains provisions which entitle the plaintiff to treat a breach thereof as a termination of the defendants' rights thereunder in a court of equity, and as subjecting them to damages in a court of law. Sound policy requires that those stipulations, making time of the essence of the agreement, should be enforced where the vendor, without being in any manner responsible for the vendee's default, acts promptly, and clearly manifests a purpose to avail himself of such provisions of the contract. The owner of land, having other business interests, may foresee that he will need or can use to great advantage the money at a particular time, and that if he can have the money on the very day named he can afford to sell on the terms specified. But he may be unwilling to sell on such terms if the payment is to be deferred. The profit to him may not be in the sale of the land, but in the use to which he can put the money, provided he can have it on the very day on which the vendee agrees to pay it. For this reason he should be allowed to stipulate in his contract that a failure to pay on the day specified shall destroy the rights of the defaulting party in a court of equity as well as in a court of law. This provision need not be in any particular form, but it is usual to express it in the

manner in which it was expressed in the contract in question. After some vacillation on the part of the English chancellors, the rule was there adopted, and it prevails in this country as well, that the parties may by their agreement make time of the essence thereof; and that in such a case a failure to comply with the terms of the contract, at the time named therein for performance, will debar the person in default from claiming any rights thereunder, even in a court of equity. Our statute recognizes this doctrine. Rev. Codes, § § 3806, 3916.

But all the authorities agree that the vendor may waive, as to any installment, the provision of the contract making time of the essence of the agreement. We think that, under the facts of this case, we are compelled to hold as a matter of law that the plaintiff waived such provision as to the default occurring on the 15th of October, 1895. It was not until January 15, 1896, that he served upon the defendants the notice specified in the agreement. This was the first indication on his part of any purpose to insist strictly upon his rights. Prior to October 15, 1895, the defendants had requested an extension of time of one year on the contract, and the plaintiff had put them off without any definite answer. It is true that this did not excuse the default. Had plaintiff acted promptly, and given the written notice specified in the agreement, the defendants could have claimed nothing from his silence and his evasive conduct. But where it is a question whether, under all the circumstance, he has not so acted that they were justified in assuming that he did not intend to take advantage of the default, the fact that he did not absolutely refuse to grant an extension, but, on the other hand, rather held out hopes that he might grant it, is a fact of some significance. During a reasonable period of time after their default they were undoubtedly at the mercy of the plaintiff. He might promptly have cut off their rights by giving the notice required by the agreement. But he did not give it within a reasonable time, when we consider the circumstances of the case. Here was a large farm of land in the possession of the defendants, as equitable owners under this

contract; and the plaintiff well knew that, unless he in some way promptly indicated his purpose to exercise his election to terminate the agreement, the defendants would naturally infer that the plaintiff intended to give them further time. The plaintiff knew that the preparation of the ground for the next year's crop would be made in the fall, and that whatever plowing was to be done before winter set in must be done in the course of the next few weeks. His contract required the defendants to plow and crop at least 400 acres in each year, and yet he waited until long after the season for plowing, according to the general custom of farmers, had passed before he notified them that they could no longer enjoy any rights under the agreement. So long as he withheld the notice, the contract was an existing contract, and the duty of the defendants under it was to go on with the plowing of the land. Under such circumstances, nothing but prompt action on his part could prevent the inference that he had decided not to insist upon the letter of the contract as to time. When a party stipulates that he will give written notice of his election to take advantage of a breach, where time is of the essence of the agreement, an unreasonable delay in giving this notice is equivalent to an assurance that as to that default the provision with respect to time has been waived. It is not at all burdensome to require diligence of action on the part of the vendor who holds the vendee absolutely in his power. He should not be allowed to watch for a season the fluctuation in the value of the thing agreed to be sold, and shape his conduct with respect to the termination of the agreement according as it appears at a much later day to be or not to be to his interests to insist upon the annulment of the contract. Especially is this the case when the medium of payment is itself not money, but property subject to considerable variations in market value. Plaintiff was to receive his pay in wheat. Had the price of wheat risen materially between October 15, 1895, and January 15, 1896, when the notice was given, we venture the prediction that, instead of receiving notice of a cancellation of the agreement, the defendants would

have been met with a demand that they perform by delivering the wheat or by paying its then market value. Time being of the essence of the entire contract, it was as much incumbent on the plaintiff to act promptly in giving his notice of cancellation as it was incumbent on the defendants to deliver the wheat on the day specified in the agreement. It would be intolerable to allow one who holds the whip over the head of the other party to the agreement to take his time in watching for a favorable turn in the market price of the commodity in which he is to be paid, with the undisclosed mental reservation that if it appears later on to be to his interests to terminate the contract he will do so. He may, of course, enforce his agreement as to time, because parties are, as a rule, allowed to make such contracts as they please, and because it is important in the business world that these understandings should be upheld, whatever excuse the defaulting party may present to save his rights. But the power which this option places in the hands of one party to an agreement, after the default has occurred, over the other party, is so great, and is so liable to abuse, if the one who wields it is allowed much latitude as to time in making and manifesting his election to give or withhold the notice required to be given by the contract, that a court of equity should exact of him the utmost good faith, fairness, and promptness in deciding that he will terminate the agreement by such notice. As he is seeking to hold the other party strictly to the agreement in respect of time, it is bare justice that he himself should not be permitted to be dilatory in disclosing his determination to put an end to the agreement. It is always possible for him to act without delay. His silence is calculated to induce the belief that he does not intend to insist upon his strict rights. And if at any time in the future he desires to fix a time within which the other party must perform or be deemed to have lost his rights, even in equity, he can accomplish this end by giving notice that, unless the other party performs his part of the agreement within a time designated (which must be a reasonable time,) he will be deemed to have forfeited his rights there-

under. If, after such a notice, the default continues, the party in default will cease to have any right to the benefits of the contract, even in a court of equity.

We think that, under the circumstances of this case, the plaintiff waived his right to terminate the contract for the breach on October 15, 1895. There is ample evidence of the good faith of the defendants. Had they remained silent, and taken no steps towards performance, during the whole of the season of 1895, and down to the time the notice was served on them, the case might fall within another rule, which requires diligence and good faith of the person who seeks specific performance. But it appears that the defendants were endeavoring to perfect arrangements to raise the money to pay up all that was due on the contract at the time this notice was served, and that they had been making these efforts for some time prior thereto. The time for the payment of the last installment had passed; and as the crop raised in 1895 was not sufficient to pay the balance due, (8,000 bushels) the crop being only about 3,000 bushels, defendants were trying to effect a loan on the property, and, with the proceeds thereof, satisfy the plaintiff's claim for the unpaid balance of the purchase price. No tender or offer to perform was required before setting up the counterclaim in this case. Plaintiff, by his positive refusal to perform, waived such tender. Thereafter defendants could, without an offer to perform, maintain an action for specific performance; and hence it follows that without any such offer they could interpose the counterclaim for specific performance interposed·in this action.

Defendants did not, however, establish a right to unconditional specific performance. Their own evidence shows that they owe more than 8,000 bushels of wheat on this contract. Having asked for specific performance, and having admitted their obligation to make further payments to entitle them to specific performance, the burden was upon them to furnish the court the data on which the amount due could be ascertained. Have they done so? If not, they must be defeated in the case, notwithstanding

the fact that they have shown a right to specific performance on paying the amount still due. Under the Newman law as originally passed, and as amended by the Rev. Codes, we have no power to send the case back for a new trial or to have more evidence taken, nor have we any authority to take further evidence ourselves. We are required to make a final decision on the record transmitted to us from the lower court. If, therefore, there is no evidence from which we can ascertain what defendants should pay to entitle them to specific performance, we are powerless to do the very thing the Newman law commands us to do; *i. e.* decide the cause according to the justice of the case. It is conceded that the defendants still owe 8,000 bushels of wheat, and the interest thereon, or the money value thereof. Four thousand bushels of this amount was due October 15, 1894, and 4,000 bushels was due October 15, 1895. If we are to take the money value of this grain on these two dates, and compute the interest thereon, we are utterly without evidence from which we can discover the amount the defendants should pay. There is no proof in the case as to the value of the wheat on either of these dates. We confess that there is language in the contract which indicates that, after an installment should fall due, the speculative element in the contract should cease as to that installment, and that thereafter the defendants must pay the money value of such wheat on the day when it was due, with interest thereon. But plaintiff's own counsel strenuously contends in this court that the deficiency was to be paid in wheat, and the interest thereon was to be computed in bushels of wheat, and it is clear that both parties to the agreement so construed it from the very beginning. Whenever there was a deficiency, plaintiff would send defendants a statment the following year, claiming, not the value of the number of bushels of wheat which defendants had failed to pay on time, but the wheat itself, with interest thereon computed in bushels of wheat. The notes which he took from time to time, representing the successive deficiencies, were payable in wheat, and not in money, and the interest thereon was computed in wheat, and not

in money. When these notes were paid, they were paid by the number of bushels of wheat they called for (principal and interest,) without any reference to the value of the wheat when it was originally due or the value at the time of such payments. Following the construction placed upon the contract by the parties themselves, and contended for in this court by their respective counsel with equal zeal, it is clear that, when plaintiff sought to terminate the contract by notice on the 15th day of January, 1896, there was due him from the defendants in wheat 8,000 bushels, with interest at 7 per cent. on 4,000 bushels thereof from October 15, 1894, and 4,000 bushels thereof from October 15, 1895, making in all 8,420 bushels of wheat due January 15, 1896. Plaintiff having taken the attitude that he would not perform, and the defendants then being in position to insist upon performance, they are regarded as having then tendered the balance, and been met with a refusal. The value of the wheat at this time was 43 cents a bushel, making the total amount then due $3,620.60. The amount the defendants must pay to secure a deed is $3,620.60, with interest thereon at the rate of 7 per cent. from January 15, 1896, to the date of payment.

It is urged that the decision of this court must direct the delivery of wheat. We think not. Neither party ever contemplated that, after the defendants had offered to deliver the wheat at a time when they could deliver it under the contract, they should still take the risk of the fluctuations in the market price thereof. Indeed, the contract allowed them to deliver the whole of the wheat at any time. Could plaintiff defeat this provision by refusing to accept, and then successfully insist that the decree should require the delivery of wheat at a time when the price thereof might be much higher than at the time the defendants had offered to deliver it? The defendants are deemed in law to have offered to perform the contract on January 15, 1896, and to have been met with a refusal on the part of the plaintiff. At that moment the amount they must pay to secure a deed became fixed.

The judgment of this court is that the judgment heretofore appealed from be set aside, and that a new judgment be entered by the District Court in substance as follows:   The defendants shall deposit with the clerk of the District Court of the Third Judicial District, in and for the County of Cass, N. D., the sum of $3,620.60, with interest thereon from January 15, 1896, at 7 per cent. per annum, less $21.10 costs, within 30 days after the District Court enters the judgment herein which it is hereby ordered to enter.   The plaintiff, at any time thereafter, shall be entitled to receive such money on executing and delivering to the clerk of said court, for the benefit of the defendants herein, a warranty deed of the real property described in the complaint herein.   In case defendants make such deposit, and the plaintiff fails to execute and deliver such deed within 10 days after the expiration of said 30 days, this decree shall operate as a transfer of the title to said land from the plaintiff, Owen Fargusson, to the defendants herein, Frank S. Talcott and Gertrude S. Talcott. Until the delivery of said deed the plaintiff shall not be entitled to receive said money, or any portion thereof, although the period of 10 days after said period of 30 days has expired, and this decree, therefore, operates as a transfer of title.   As the amount directed to be paid by the defendants by the judgment of the lower court is less than the amount we find to be due the appellant, the respondents should not recover their costs and disbursements on this appeal.   But, in view of the fact that they have been successful on the main question, we think that no costs should be taxed against them.   The judgment shall provide that, in case of the failure of the defendants to make the payment specified within the time prescribed, they shall be forever barred and foreclosed of all right, title and interest in' and to the land described, and that the plaintiff shall thereafter be entitled to the immediate possession thereof.   Let judgment be entered in accordance with the foregoing directions.   All concur.

. (73 N. W. Rep. 207.)

NOTE—Unless the contract by express words creates the relation, the vendor and

vendee under a contract for sale of land upon crop payments do not become tenents in common of the crop, nor is the relation of landlord and tenent created. *Moen* v. *Lillestal*, 5 N. D. 327. Where notes were executed by the vendee for the purchase price of land bought under contract for deed—the notes and contract must be construed together as part of one indivisible transaction. *Shelly* v. *Mikkelson*, 5 N. D. 22. So long as the vendee retains actual possession under his contract, his right to control is not impaired because of his default. *Nearing* v. *Coop*, 6 N. D. 345. After division of the grain the vendor under farm contract cannot maintain conversion for vendees portion of the grain. *Lloyd* v. *Powers*, 4 Dak. 62. A refusal by one party to perform his contract excuses performance by the other party. *Brace* v. *Doble*, 3 S. D. 110–416. The purchaser cannot be compelled to accept a deed until the title is free from doubt. *Black Hills Nat. Bank* v. *Kellogg*, 4 S. D. 312. But to recover back money paid under a contract of purchase, the vendee must show that he has performed his part of the contract, or tendered performance or that the contract has been rescinded. *Way* v. *Johnson*, 5 S. D. 237. To rescind a contract the vendee must restore or offer to restore all the consideration he received under it. *Johnson* v. *Burnside*, 3 S. D. 230. A contract for forfeiture of all payments made thereunder in case of the vendees failure to perform his contract, is not void under § 3581, Comp. Laws. *Barnes* v. *Clement*, 8 S. D. 421.