JOHNSTON FARM INVESTMENT COMPANY, a Corporation, Appellant, v. FRANK HUFF and Mrs. Frank Huff (also known as Fannie Huff), Respondents.

(204 N. W. 333.)

**Pleading — action for cancellation of land contract.**

1. Where the prayer for judgment asks for a cancellation of a land contract and for possession of the premises, and the general tenor of the evidence and the complaint is consistent with such prayer, the action is one for cancellation, notwithstanding an allegation to the effect that the plaintiff has declared the balance of the purchase price due and payable.

**Vendor and purchaser — failure to give notice within period of limitations fixed by contract by vendor, waives defaults.**

2. Where a contract for the sale and purchase of land provides that time is of the essence thereof, and that the vendor may, within ninety days after knowledge of defaults by vendee, declare the contract terminated and all payments and improvements forfeited; failure of the vendor to give notice within the period of limitation fixed by the parties of his purpose and intention to end the contract by reason of defaults, amounts to a waiver of such defaults' and the vendor may not thereafter rescind by reason thereof.

**Vendor and purchaser — commencing, in good faith, to cancel land contract because of defaults by purchaser is not such breach thereof as entitles purchaser to cancellation.**

3. Commencing, in good faith, a suit to cancel a land contract on the ground of defaults by the vendee, is not such a breach thereof as will entitle the latter to a cancellation, although, because of delay by vendee in starting the action, defendant was not in technical default, the delay having worked a waiver of the vendor's right to cancel on account of non-performance by vendee.

**Vendor and purchaser — held that neither party was in default so as to be entitled to cancellation of contract.**

4. For reasons stated, it is held that neither party was in default so as to be entitled to cancel the contract.

**Vendor and purchaser — conveyance of property by vendor in executory contract is not such breach as entitles purchaser to cancellation.**

5. Conveyance of the property by the vendor in an executory contract of sale to a third party is not such a breach as will warrant rescission or cancellation by the vendee, where the transfer is made in recognition of and in subordination to the rights of the latter under the contract. When an absolute transfer is not intended and the title is not put beyond the control of the vendor, the contract is not broken.

**Judgment — decree cancelling land contract not vacated if both parties desire cancellation, purchaser having abandoned premises and vendor had taken possession.**

6. A decree cancelling a land contract will not be vacated where it appears that both parties desire a cancellation, altho the record shows that neither party is entitled, as a matter of law, to terminate the agreement, where vendee has abandoned the premises and the vendor has taken possession.

Opinion filed May 5, 1925.

Judgments, 34 C. J. § 668 p. 418 n. 46. Pleading, 31 Cyc. p. 116 n. 59. Vendor and Purchaser, 39 Cyc. p. 1391, n. 55; p. 1417 n. 88, 89 New; p. 1422 n. 28 New.

Appeal from the District Court of Stutsman County, *Jansonius*, J. Modified and affirmed.

*Carr & Rittgers,* for appellant.

"Upon the breach of the conditions of a land contract the vendor has (the choice) of three remedies: (a) he may elect to sue for the unpaid purchase money; (b) he may elect to sue for specific performance of the contract; and (c) he may elect to declare the contract at an end." Oconto Co. v. Bacon (Wis.) 195 N. W. 413.

"No provision in any contract for the purchase of land or an interest in land shall be construed to obviate the necessity of giving the aforesaid notice. And no contract shall terminate unless such notice is given, and any provision in such contract to the contrary notwithstanding, but the notice herein required shall not be deemed necessary where the contract in question is sought to be terminated by an action at law or in equity brought for that purpose upon failure to perform." Ryan v. Bremseth, 186 N. W. 821.

"By an intentional, wilful refusal to perform his contract, the purchaser may very well place himself without the field of equitable re-

lief. He cannot at the same time have the benefit of the contract and of a rescission thereof." Oconto v. Bacon (Wis.) 195 N. W. 414.

"Where one party has an option to purchase property until a certain date, he cannot rescind before such time because the title to such property was unmarketable." Winter v. Bostwick, 172 Fed. 285.

"A contract for the sale of land cannot be avoided by the vendee in the absence of fraud or mistake unless vendor abandons the contract or fails to comply with its terms." Annis v. Burnham, 15 N. D. 577.

"Where defendant went into possession of land under contract to purchase and made improvements thereon, he is not entitled to compensation for such improvements after he forfeited the contract." Coleman v. Stalnoke (S. D.) 88 N. W. 107; Hickman v. Lang (S. D.) 150 N. W. 298.

"For one may contract to deliver title to land even though he does not have it, so long as he is not a mere volunteer and is acting under good faith." McVeety v. Harvey Mercantile Co. 24 N. D. 245, 139 N. W. 556; Golden Valley Land & Cattle Co. v. John Stone, 25 N. D. 148.

"The institution of a suit by the vendor against the vendee to recover rent, and his suit against the widow of the vendee to recover possession of the land, where such suit fails, does not entitle the representative of the vendee to treat the contract as rescinded by the vendor and recover the purchase money paid." Donaldson v. Waters, 30 Ala. 175.

"Refusal of the vendor that will excuse the vendee from complying with the terms of his contract must be a distinct and unqualified refusal to be further bound by the contract or to accept any tender that might be made under it." Way v. Johnson (S. D.) 58 N. W. 552; Lake Shore v. Richards (Ill.) 30 L.R.A. 33.

*John A. Jorgenson,* for respondents.

Though time is originally of the essence of the contract, a strict performance may be waived. Colee v. Shepherd, 30 Minn. 446, 16 N. W. 153; Robinson v. Cheney, 17 Neb. 673, 24 N. W. 378; Hunter v. Daniel, 4 Hare, 420, 9 Jur. 520, 14 L. J. Ch. 194, 64 Eng. Reprint, 712.

Subsequent conduct of the parties may amount to a construction by them of the original contract so as to show they understood and re-

garded that time was not of the essence of the contract. Taylor v. Baldwin, 27 Ga. 438, 73 Am. Dec. 736; Walker v. Owens, 25 Mo. App. 587; Thompson v. Keeler (N. J. Eq.) 42 Atl. 1043; Sylvester v. Born, 132 Pa. 467, 19 Atl. 337.

After a waiver time ceases to be essential and does not again become material until the vendor makes it so by proper notice insisting upon performances within some reasonable time. Boone v. Templeman, 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126; Moore's Estate, 9 Pa. Dist. R. 84.

If the vendor desires to rescind or forfeit a contract of sale for default in performance, notice of his intent must in general be given to the purchaser. Fears v. Merrill, 9 Ark. 559, 50 Am. Dec. 226; Acosta v. Anderson, 56 Fla. 749, 48 So. 260; Presser v. Hildenbrand, 23 Iowa, 483; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; Coles v. Shepard, 30 Minn. 446, 16 N. W. 153.

A delay of three months before giving notice is too long and shows a waiver. Ferguson v. Talcott, 7 N. D. 183, 73 N. W. 207.

A default that has once been waived cannot afterward be made a ground for forfeiture. Van Dyke v. Cole, 81 Vt. 379, 70 Atl. 593, 1103.

A waiver once made cannot be recalled. 13 C. J. 609, note 54; Sheldon v. Dunbar, 200 Ill. 490, 65 S. E. 1095; Kohler v. Lundberg (Utah) 180 Pac. 590, 592; Dworkowitz v. Cascio, 193 N. Y. Supp. 329.

No forfeiture can be declared while plaintiff is unable to convey. Sievers v. Brown, 34 Or. 454, 45 L.R.A. 642, 56 Pac. 171; Bigler v. Morgan, 77 N. Y. 312; Gray v. Smith, 28 C. C. A. 168, 83 Fed. 824; Mix v. Beach, 46 Ill. 311.

The title to which the purchaser is entitled must be made out by the vendor himself. Hussey v. Roquemore, 27 Ala. 281; Royal v. Dennison (Cal.) 38 Pac. 39; Gaar v. Lockridge, 9 Ind. 92.

The purchaser is not bound to accept a good title from a third person. Wollenberg v. Rose, 45 Or. 615, 78 Pac. 751.

JOHNSON, J. This is an action to cancel a land contract. It was

commenced by the issuance of summons on February 26, 1923; defendants were served on February 28, 1923.

On February 11, 1917, the parties entered into an agreement for the sale by plaintiff to the defendants of a one-half section of land in Stutsman county, for the sum of $19,500.00. Of the consideration, $4,000.00 was paid at the time the contract was made by the defendants conveying to plaintiff certain tracts of land in Minnesota; defendant Huff agreed to pay the balance of the purchase price by delivering before January first each year, one-half of the crop raised on the premises. On the first day of January, 1928, the vendee agreed to pay the remainder whereupon plaintiff was to convey by the usual deed of warranty. Defendant agreed to pay all taxes at least thirty days before penalties or interest accrued thereon and to deliver to the vendor proper receipts, showing such payments. Time is expressly declared to be of the essence of the agreement. If the vendee fail to perform punctually the several agreements made by him, the vendor "may within ninety days after the knowledge of said failure or default, declare this contract void and all payments or improvements made on said land shall belong to and be retained by the first party as and for rent for said land and the first party shall then be entitled to immediate possession of said land; notice of said default and avoidance may be given by the method provided by law, or in the absence of such provision by the United States mail. Or, upon such default the first party may elect to declare all of the unpaid balance of the purchase price immediately due and payable, and may proceed to collect the same by the usual legal process."

With the possible exception of the seventh paragraph, the complaint is in the form usual in this class of actions. In the sixth paragraph are allegations of numerous defaults, all of which are controverted by the defendants. In the seventh paragraph it is said "that plaintiff has elected to declare the whole sum secured by said contract to be due, and owing and to declare the payments which have been made thereon forfeited and has notified said defendants of said cancellation and intention to forfeit the said contract . . . ; all within ninety days after the last default in said payments." The prayer for judgment is "that said contract be in all things cancelled and determined and that it be

given possession of the said premises and for such other relief as may be just and equitable in the premises."

To this complaint defendants interposed an answer and a counterclaim. The answer denies the second paragraph of the complaint to the effect that plaintiff is the owner of the premises subject to the contract in suit; it denies the sixth paragraph containing the alleged defaults, and admits the seventh paragraph quoted, supra. The answer alleges that the plaintiff did not make its election or declaration within ninety days after knowledge of any default under the contract and that its election has been manifested solely by the commencement of this action. The counterclaim alleges, in general, the payments under the contract and improvements of the property made by defendants since they took possession thereunder; that defendants have seasonably delivered the portion of the crop stipulated in the contract, paid all taxes, and otherwise fully performed. It is alleged that the value of the grain and the amount of taxes paid "equal or exceed the rental value of said land during the period in which defendants have held the same under the contract." It is then alleged that the plaintiff by commencing this action, and by its election to declare the whole sum due and to forfeit payments and improvements, and by failing to notify defendants of such election as provided by law and by the contract, breached the contract; defendants say that they rescind the agreement and demand a return of all payments made, less the actual rental value of the premises during the period of possession and use. Defendants pray that the action be dismissed and that they have judgment on the counterclaim for the total amount paid and the value of the improvements, less the rental value.

The evidence shows that the plaintiff had purchased the premises involved herein under a contract for a deed from one Mary Lee; that Lee, before the instant case was tried, commenced an action to cancel that contract; that a judgment was entered therein, by the judge who tried the case at bar, cancelling the same and decreeing possession and title to the premises in Mary Lee. The Lee case had not been decided at the time the instant case was tried, but by stipulation and with the permission of the trial court, the case at bar was held open until that of Lee against the plaintiff was decided. The court found that the plaintiff was, at the time of the trial or decision of the case at bar, un-

able to perform the contract with the defendants to convey title to the property, and that it had no title to, or interest in, the premises.

On August 31, 1921, John Schilt and his wife and defendant Huff entered into a contract of sale by the former and purchase by the latter, of certain lots and property in Redwood Falls, Minnesota, for the sum of $10,000.00. On the 19th day of September 1921, the defendant Huff and his wife assigned the Schilt contract to the First National Bank of Montpelier.

On April 1, 1922, defendant Huff executed a note in the sum of $1106.85 with interest at 10%, and payable to the plaintiff on December 1, 1922; also another note payable to the plaintiff at the same rate of interest in the sum of $511.29, payable December 1, 1922. On the same day the defendant Huff and his wife executed a mortgage upon some property at Redwood Falls, Minnesota, to secure these notes; and on May 1, 1922, Schilt and wife executed a warranty deed conveying the Redwood Falls property to the First National Bank of Montpelier. Although the deed was absolute in form, it was intended to secure loans and advances made by the bank to the Huffs. On April 1, the defendants executed a warranty deed of the premises described in the mortgage conveying to plaintiff their title thereto. This deed, according to the evidence, was also intended for security.

The record shows that the Secretary and Treasurer of the plaintiff, one Marken, was also cashier and, part of the time, vice-president, of the First National Bank of Montpelier; that the First National Bank of Montpelier made loans in considerable amounts to the Huffs to aid them in their farming operations; and that the same were apparently guaranteed by the plaintiff. The Huffs, having failed to repay, it became necessary for the plaintiff to discharge their obligations to the bank, and, as heretofore stated, two notes, and the mortgage securing the same, were executed and delivered by defendants to the plaintiff on April 1, 1922. The evidence tends to show that the defendants authorized the plaintiff to sell the Redwood Falls property and to apply the proceeds upon the indebtedness; that the deed to plaintiff was made in order to carry out this purpose. We think it fairly appears from the entire record that the plaintiff was authorized to apply the proceeds of the sale of the Redwood Falls property, approximating $1750.-00 upon the indebtedness secured by the mortgage and evidenced by the

two notes mentioned. The evidence shows that the plaintiff applied $1019.00 of the proceeds of such sale upon the note for $1106.85 which the mortgage secured; that $750.00, received from the sale of the Redwood Falls property, was by plaintiff applied, not on the indebtedness secured by the mortgage on that property, but on the indebtedness of the defendants under the land contract. It was this item of $750.00 which the trial court directed the plaintiff to return.

From 1917 to June 1, 1922, the defendant failed in several particulars to comply with the contract, but in each instance the record sufficiently shows a waiver of the forfeiture clause. It is, in fact, conceded that on June 1, 1922, no defaults existed entitling plaintiff to a cancellation of the agreement, on that ground, although in some respects defendant had failed to perform fully or on time, and had not fully repaid substantial advances made or guaranteed by plaintiff.

Subsequent to June 1, 1923, the defendant delivered to the plaintiff, as proceeds of grain raised in 1922, $268.07, and a hail warrant in the sum of $195.48, a total of $463.55. From this must be deducted a threshing bill amounting to $162.00, leaving a net payment on account of crop raised and including the hail warrant, of $301.55. It appears from plaintiff's testimony that the actual value of one-half of the crop of 1922, which under the contract defendant was required to deliver on or before January 1, 1923, was $155.30. The first installment of the 1922 taxes, which would become delinquent March 1, 1923, amounted to $116.03. The total due on account of 1922 taxes and crop raised was, at the time the action was commenced, $261.33. On the basis of these figures there was no default under the contract on February 26, 1923. There was, in fact, an overpayment—more than was due on account of the crop and the first installment of the taxes of 1922—of $30.22, to be applied on notes and advances due plaintiff prior to June 1, 1922, or on account of the property of the defendant Huff in Minnesota, which was conveyed to plaintiff or the Montpelier bank for security.

The 1921 taxes were not paid by the defendant. They amounted to $463.23 when paid by the plaintiff on December 11, 1922. The first installment of the 1921 taxes became delinquent on March 1, 1922. It is not claimed that on this account a default existed warranting cancellation. The second installment became delinquent on Oct. 15, 1922;

plaintiff knew of this default as early as Nov. 23, 1922, because on that date it wrote a letter calling Huff's attention to it.

The first intimation of plaintiff's purpose to enforce the forfeiture clause of the contract was given defendant when the complaint was served, more than ninety days after knowledge of the default in the payment of the taxes.

The court found that the plaintiff elected to declare the whole sum due and owing and all payments and improvements forfeited, but that the plaintiff had not made its election within ninety days after knowledge of the alleged defaults; and that no notice, oral or written, of such election or declaration was ever given defendants.

The court held that the defendant Frank Huff was not in default under his contract and that the plaintiff was not entitled to a cancellation of the agreement, or a forfeiture of his rights thereunder, and of the improvements made on the land; that plaintiff is not able to perform the contract, and has, by an absolute decree been divested of title to or interest in the land; and that the contract should be cancelled, provided the plaintiff release to Frank Huff its interest in the property in Redwood Falls, Minnesota, and pay to him the sum of $715.63, this item being a part of the proceeds of the sale of the Redwood Falls property, with interest at the rate of 6% per annum, from July 2, 1922, and $195.48 with interest thereon from December 30, 1922. The second item represents the hail warrant heretofore mentioned. Costs were likewise awarded the defendants.

Judgment was entered pursuant to the findings and the order of the trial court from whic hthe plaintiff appeals and asks a trial de novo in this court.

The plaintiff's main and most important contention is that the court erred in finding that there was no default under the contract in permitting the defendants to recover on the strength of the contract which they had abandoned before they answered the complaint. It is further contended that the court erroneously found that the plaintiff was unable to perform its contract solely because of the judgment in the case of Lee v. the plaintiff, cancelling the contract between those parties.

The principal contention on the part of the defendants is that there was no default; that the action to cancel the land contract constituted

a breach by plaintiff justifying a rescission by defendants with right to damages for the breach.

After plaintiff commenced its action, respondent promptly sought to rescind the contract, and abandoned the premises the following May. As a result the land was not cropped in 1923. The vendee seized upon the allegations of paragraph 7, supra, admitted them, charged plaintiff with a breach of contract by bringing suit, and attempted to rescind because of such breach.

By failing to give timely notice of its intention to take advantage of the forfeiture clause and declare the contract void and all payments or improvements made forfeited to it as rental for the use of the property, the plaintiff waived its right to cancellation. The record contains no evidence tending to show notice to defendants of intention to cancel the contract, on account of their defaults thereunder, "within ninety days after the knowledge," of defaults on the part of the vendee. Time is declared of the essence of the agreement. It must be so with respect to the rights of both parties. Vendor and vendee agreed upon a time limit within which the vendor must make known to vendee his purpose to declare a forfeiture on the ground of non-compliance with the contract. That period having been suffered to pass without the declaration or notice stipulated, the vendee could rightfully assume that the vendor waived his rights in this regard. Whatever defaults may have existed, due to vendee's failure to pay the 1921 taxes before interest and penalties accrued in March and October, 1922, were effectually waived by non-action on plaintiff's part for a period of more than ninety days after knowledge of the default. The remedy of cancellation coupled with forfeiture of payments and improvements, is drastic; when the vendor invokes it the court must give full effect to all contractual provisions calculated to protect the interests of the vendee to the end that he be not summarily deprived of the fruits of many years of labor. Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207. We think that the defaults, as to the installment of taxes, were waived before the action was commenced. The finding of the trial court that there was no such default in making payments at the time of the commencement of this action as would support a suit to cancel the contract on that ground, is amply supported by uncontradicted evidence.

What notice, if any other than the timely service of a summons and

complaint on the vendee in an action to cancel the contract, must be given to the vendee in a contract like the one in suit, is not before us. No opinion is expressed on that question.

We think it clearly appears from the complaint that the vendor sought to cancel the contract for breach of essential terms therein and to retain the payments made thereunder as and for the rental of the land, pursuant to the terms of the agreement. With this theory the prayer for relief is wholly consistent; with any other theory, the prayer and the proof are inconsistent. While the prayer is not a part of the cause of action, it may, and, we think here does, indicate what plaintiff supposed to be the object of his action, and the legal consequences of the facts stated. The prayer clearly shows that plaintiff deemed itself entitled to a cancellation of the contract under the facts averred.

It is clear that bringing this action to cancel the agreement, notwithstanding the evidence fails to disclose adequate grounds for awarding that remedy to plaintiff, did not warrant a rescission by defendant Frank Huff on the theory that this proceeding constituted a breach of the contract. The trial court correctly refused to sustain the vendee's contention on this point. No such penalty may be visited on a party, in the circumstances disclosed in this record, for appealing, in good faith, to the courts for the vindication of rights he thinks have been violated. There is no suggestion of bad faith in bringing the suit. The fact incontestably appears that defendant had not made payments in accordance with the contract. Huff, though not technically in default, because of delay on the part of plaintiff in commencing proceedings to enforce the forfeiture clause, was none the less guilty of breaches of contractual obligations. The fact that plaintiff in good faith mistakenly attempted to cancel instead of resorting to some other remedy to enforce performance by defendant, is not such a wrongful repudiation of the agreement as alone will authorize Huff to refuse longer to be bound by it. Instituting improperly a suit for cancellation may be a technical breach, but not every breach is sufficient to justify a rescission by the other party. No absolute refusal to fulfill the contract can be implied, under the facts, from the commencement of this action. Indeed, in bringing suit plaintiff recognized the existence and binding force of the agreement and applied to the court to enforce the forfeiture clause therein. To hold that the commencement of the action to cancel was

such a breach as to defeat the object the parties had in view when they entered into the contractual relation would be wholly unwarranted. See 6 R. C. L. 929; 13 C. J. 1913.

It has been frequently held that conveyance of the property by the vendor, is not necessarily such a breach as will warrant a rescission by the vendee on the ground that the vendor has lost title to the land described in the contract. If the effect of the transfer is not to place it beyond the power of the vendor to perform his contract, or does not amount to a repudiation thereof by him, it is not such a breach as alone will warrant rescission by the vendee and a recovery of the installments paid on the purchase price. James v. Burchell, 82 N. Y. 108. The reasoning is that such a transfer does not in itself preclude the possibility of performance, or evidence conclusively a wrongful abandonment of the contract and a present purpose not to perform at the time and on the conditions stipulated. A sale or transfer of title in recognition of the vendee's rights and in subordination thereto, is not a breach of the contract. The vendor then presumably intends and is able to reacquire such a title as he has agreed to convey at the time when the vendee has so far performed as to be entitled to the transfer. See Brimmer v. Salisbury, 167 Cal. 522, 140 Pac. 30, where the California decisions prior to 1914 are reviewed and summarized. See also Kicks v. State Bank, 12 N. D. 576, 98 N. W. 408. It is the substance, not the form of the transaction that is of controlling importance. If the purchaser from the vendor in the executory contract holds the title in subordination of the rights of the vendee therein and is ready, able and willing to convey in conformity therewith, the vendee cannot regard the transfer as a breach. The principle upon which the decisions generally rest is that the effect of such transfer depends on the intention of the parties and whether the vendor is so divested of title as to put it beyond his control. If an absolute transfer be intended and the title be put beyond the control of the vendor, the executory contract of sale is regarded as broken and the vendee need not perform.

Plaintiff was not in default when the defendants abandoned the premises. It had then done or suffered nothing to be done justifying Huff in refusing to be longer bound by the contract. The Lee Case was not decided until all the testimony in the case at bar had been taken, and after defendants left the land. They did not abandon the

property and rescind on the ground that plaintiff had put it out of its power to perform the contract by permitting itself to be divested of title by a judicial decree; they based their claim of right to rescind on the sole ground that by bringing a suit and alleging defaults that did not exist, the plaintiff committed a breach justifying rescission. Neither party was in default, at the time the case was at issue, so as to justify cancellation or rescission. The fact that plaintiff permitted a judgment to be entered against it in the Lee case awarding Lee an absolute title to the property, after the defendants left the land and after the instant case had been tried, was not, in any view of the case, such a breach as alone would justify a judgment of rescission in behalf of defendant, with a recovery of the payments and the value of the improvements. If such extinguishment of the vendor's title as resulted from the Lee judgment might, in some circumstances, constitute a breach of the contract and form the basis of a counterclaim for cancellation and a return of payments and the value of improvements made (see Kicks v. State Bank, supra), that result could not follow in the case at bar for the reason that the record shows that the judgment in the Lee case, divesting plaintiff of the title, was entered upon the express stipulation and understanding that Lee would perform any and all outstanding contracts obligating the instant plaintiff to convey any of the premises in that judgment described. In other words the transfer took place in subordination of Huff's rights under the executory contract of sale and with full recognition of them. One Marken, Secretary-Treasurer of the plaintiff, testified:

Q. Are you ready, Mr. Marken, at this time and have you at all times been ready to have furnished and delivered to Mr. Huff a deed to the premises involved in accordance with the terms of this contract made out with him on payment of the amount of the balance due on this contract?

A. Yes, sir.

Q. Are you still ready and willing to do that on behalf of the Johnston Farm Investment Co.?

A. Yes.

John Knauf, attorney for Mary Lee, testified among other things:

Q. Then Mary Gray Lee at this time is the owner of that land?

A. Yes.

Q. And the Johnston Farm Investment Co. is not interested?

A. They have interest only to the extent that we are authorized by the judgment and order entered in the suit heretofore pending between Mrs. Lee and the Johnston Farm Investment Co. to take the balance due under these contracts which were outstanding, among them the Huff contract, and which have been unpaid, and to accept the same and thereupon to make delivery of deed pursuant to the terms of the contract, or more suitable terms if agreeable to the different persons holding contracts.

Q. Was any conveyance of any kind made of this Huff land to Mary Gray Lee by the Johnston Farm Investment Co. releasing the right title and interest which the Investment Co., acquired under its contract, except the judgment?

A. Only such as are contained in the order of judgment and judgment entered in the case.

Q. And the order for judgment and the judgment in that case is the sole written instrument affecting the title to that land?

A. That is my understanding of it.

Q. Have you any further instructions from Mary Gray Lee or her husband with reference to this matter?

A. As to other lands?

Q. I mean this particular piece only?

A. No I have not except this, that I am authorized to take whatever would be suitable to the parties so far as taking mortgage for balance which might be left unpaid. I have discretion in the matter of delivering of the deed upon partial payment.

Q. Well, how much discretion have you?

A. Down to the point where I can accept the taxes which were unpaid by Mr. Huff and the unpaid interest under the contract and one-fourth of the balance unpaid on the principal.

We think the foregoing testimony clearly shows that the rights of the defendant Huff, had he been able or willing to perform, were fully preserved; and that Mrs. Lee took judgment in subordination and with full recognition of them under the contract with the plaintiff in the present action. The court made no finding as to the rental value of the property. The parties stipulated in the contract that the payments and improvements should be deemed the rental value. The court

found that the payments and improvements equalled or exceeded the value of the use. Manifestly, even if the contract had been silent on the subject of rental value, such a finding would be insufficient to support a judgment for a return of over $900.00, plus interest and costs, in the event of cancellation. Moreover, as has been shown, neither party was entitled to a judgment cancelling the contract on the ground of default. The evidence is wholly insufficient to enable this court to say, as a matter of law, that the provision in the contract that, in case of cancellation on account of default by the vendee, payments and improvements should be retained by the vendor as and for the rental value of the land, fall under the condemnation of §§ 5924, 5925, 7138 and 7152, Comp. Laws, 1913, as a forfeiture, or as an attempt to agree on a measure of damages prescribed by statute.

We think the trial court correctly held that the plaintiff was not authorized to apply the item of $750.00 upon the indebtedness under the land contract. We think this item should have been returned to the defendants, or applied on the notes which the mortgage on the Redwood Falls property secured; and that the plaintiff had the right to apply the proceeds of the sale of the Redwood Falls property upon the indebtedness evidenced by the notes and mortgages, and that such application should have been directed by the trial court. If any balance remained after discharging the notes, that should have been returned to the defendant, or applied as directed by him. We think also that the proceeds of the hail warrant were properly applied on the general indebtedness under the land contract. Although defendant was not in default thereunder, he apparently acquiesced in such application at a time when neither party contemplated a cancellation of the contract. As has been shown, the overpayment for 1922 was only about $30.00. Upon payment by defendant of the debt secured by liens on the Redwood Falls property, plaintiff's interest therein should be released.

The trial court concluded, inasmuch as both parties desired to cancel the contract, although neither had legal cause therefor, that a dismissal of plaintiff's action would merely result in another lawsuit, and that a judgment of cancellation should be entered. Whatever may be technically urged against the result thus reached, we think the disposition made both practical and equitable. There is no reason why that result should be disturbed.

As modified herein, the judgment is affirmed. Neither party shall recover costs. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BIRDZELL, JJ., concur.