This action was brought to recover damages claimed on account of the breach of the leases of two tracts of school land. Plaintiff in his complaint alleged that the State of North Dakota was the owner of the land in question; that in March 1940, he leased it for terms of three years, and thereafter, pursuant to the terms of the leases, entered into possession thereof; that he duly paid or tendered the rentals as required by the leases and otherwise fully complied with all their terms and provisions; that in March 1941, he was wrongfully evicted by the defendants and thereby was deprived of and lost the profits he would have realized during the years 1941 and 1942 to his damage in the sum of $5,000.
Defendants, answering, admitted that the State of North Dakota owned and held the lands in question as trustee of the Permanent School Fund of the State; that they were leased to the plaintiff as set forth in the complaint, but denied any wrongful eviction of the plaintiff or that he had suffered any damage, and, in that behalf, alleged the plaintiff had failed to pay the rentals as required by the terms of the leases and had abandoned the premises; that accordingly the leases were cancelled *Page 49 
and in 1941 the lands were rented to another and thereafter in 1942 were sold.
On the issues as thus made the case was tried to a jury. Plaintiff had a verdict and judgment was entered thereon. Whereupon, the defendants perfected the instant appeal.
Defendants ground their appeal on alleged errors of the court in rulings on matters of evidence, in instructions given, and in denying their motions for directed verdict and for judgment notwithstanding the verdict or for a new trial. They have specified many errors, but we think it will not be necessary to consider all of those thus specified.
There is little dispute as to the facts. The land in question was improved non-grant farm land, a part of the Permanent School Fund of the State of North Dakota. The State held title as trustee of that fund. Pursuant to the statute, chapter 218, Session Laws 1939, the Board of University and School Lands, charged with the management and control of the Permanent School Fund, had by resolution fixed the minimum rentals for which the lands might be leased, and they, together with other lands, both grant and non-grant, were advertised to be leased at auction in March 1940. On the day set the auction leasing was held as advertised. An agent of the board conducted it. Before asking for and receiving bids, and pursuant to the statute, § 341, Comp Laws 1913, and the direction of the board, he stated the terms and conditions on which the land would be leased. When these particular tracts were offered the plaintiff bid the minimum rentals, fixed according to the information the board then had, and there being no other bidders his bids were accepted and separate leases covering the two tracts were executed and delivered to him. These leases were for terms of three years and, among other things, provided that the lessee should pay the rental each year,
"during the three years, and as follows: One-third payable at or before the execution and delivery of this lease, one-third on January 1, A.D. 1941, and one-third on January 1, A.D. 1942, said payments to be made to the Treasurer of said County *Page 50 
(Dunn) at his office or to such other person as the party of the first part may direct. And it is hereby expressly understood, declared and agreed, by and between the parties hereto, that this lease is made and the continuance of the term hereby demised is dependent upon the following expressed conditions, viz:
That the rent hereby reserved shall be paid on or before the day when the same shall become due by the terms thereof. . . .
. . . . .
Said party of the second part further agrees that time is and shall be deemed and taken to be the very essence of this lease, and of all and each of the covenants and conditions herein, and all courts shall so construe the same and that unless all and each of the terms, covenants and conditions herein shall in all respects be complied with by the party of the second part, at the respective times, and in the manner herein specified and declared, the term hereby demised at the option of the said party of the first part, shall cease and terminate and the party of the first part shall have full right to take possession of the premises hereby leased; and the party of the second part shall lose and be debarred from all rights, remedies or action either by law or equity, upon and under this instrument; and no waiver of time or performance shall be implied or alleged to excuse a failure, unless such waiver shall be in writing signed by a duly authorized agent or attorney of the party of the first part. And if at any time said term shall end at the election of said party of the first part, said party of the second part hereby covenants, promises and agrees to surrender and deliver up said above described premises and property peaceably to the said party of the first part or its duly authorized agent or attorney, immediately upon such termination of such term aforesaid, and in as good condition as now, necessary wear and damage by the elements excepted; and if he shall remain in possession of the same after the termination of this lease in any of the ways above mentioned, he shall be deemed guilty of a forcible detainer of said premises under the statute; and in order to enforce *Page 51 
a forfeiture of this lease of nonpayment of rent when due, no demand for rent when due, nor a written or verbal notice shall be required to quit the premises, or that this lease contract has been cancelled on account of the failure to pay the required amount of rental in due time, any demand therefor being hereby expressly waived; nor shall the acceptance of any rent renew this lease for any time or purpose whatsoever."
The leases further provided that the land might be sold and, in such case, they might be cancelled by the board.
Plaintiff went into possession under his leases. He farmed the land during the year 1940. The defendants offered to prove that the amount of rental paid by the plaintiff and for which one of the tracts was stricken off to him at the leasing in 1940, was, through error and mistake, less than the amount that should have been charged pursuant to the rules of the board. This error arose because of incorrect information as to the nature and extent of the improvements on the land given by the plaintiff to the leasing agent in response to the latter's inquiry. It was not discovered until sometime in July 1940, whereupon the manager of the leasing department mailed a notice to the plaintiff that such an error had been made and the rental should have been $27.15 more than the amount paid and for which the lease was executed and that unless this deficiency was paid the department would be in no position to accept the 1941 rental. Plaintiff objected to this offer of proof on the ground that the lease was written; that the amount of rental stipulated therein was that which he had bid at the time of the leasing; that this was an attempt to vary the terms of the written contract; that the defendants' remedy in case there was such an error was by action to cancel or reform the lease; that on all these accounts the evidence to establish the offer of proof was inadmissible. The court sustained the objection. However, it appears from the record that the letter above referred to was mailed to and received by the plaintiff, but that he paid no attention to it. The letter was offered in evidence but objection to its admission was sustained. In any event, plaintiff failed to pay or tender the payment of any rent on or before January 1, 1941, and never *Page 52 
at any time paid or tendered payment of any amount in excess of the rental stipulated in the lease.
Pursuant to the statute, § 342, Comp Laws 1913, as well as to the terms of his contract, payments of the rental were to be made to the county treasurer. Plaintiff testified that the latter part of January 1941, he went to the office of the treasurer and inquired about the payment of his rent. The treasurer told him that the time to make such payments had been extended. So, relying on this statement he made no payment at that time. Again, the latter part of February 1941, he went to the office of the treasurer, who then told him he might pay the rental at any time up to the day before the next leasing date. The treasurer also gave him a copy of a letter, dated February 26, 1941, written by the manager of the leasing department to the treasurer, advising the latter that due to adverse economic conditions the time within which payment of school land rentals might be made had been extended and that the treasurer should accept payments of such rentals when tendered up to the day before the next leasing date. So he made no payment then.
The leasing of school lands in Dunn County for the year 1941 was held on March 21. On March 19, the plaintiff went to the office of the county treasurer and tendered to him the rent for the year 1941 in the amounts stated in the leases. The treasurer accepted this payment and gave his receipt therefor. On March 21, when the leasing auction was held, plaintiff appeared and protested the leasing of the tracts in question on the ground he had leases therefor and had paid the 1941 rental pursuant to their terms. The agent of the land department in charge of the auction told him that these leases had been cancelled because of failure to pay the rentals in the amount required when due and therefore the lands were subject to lease. The plaintiff left. The auction proceeded and the lands in question were offered for lease. One Hopchuck was the highest bidder, bidding the minimum amounts determined according to the rules fixed by the board. These bids were accepted but no leases were executed at that time because the plaintiff's payment had been received and receipts given him therefor. Thereafter, and on *Page 53 
March 28, at the direction of the land commissioner, the county treasurer refunded to the plaintiff the amount which plaintiff had paid as rentals for the year 1941. Plaintiff accepted this refund under protest, but only after the treasurer had assured him that he would forfeit no rights by doing so. Thereafter plaintiff made no attempt to enter upon and use the lands covered by the leases. After the refund was made to the plaintiff the leases to Hopchuck were executed and he went into possession and farmed the lands. In December 1941, the lands were advertised to be sold at public auction, of which plaintiff was given notice, and were sold in January, 1942.
On the trial of the cause plaintiff in support of his claim of damage for loss of the profits he would have made had the leases not been cancelled, testified he had intended to farm the land during the year 1941; that he had the seed and the equipment to do so; that if he had farmed it he would have planted the same crops that Hopchuck planted; that he had tried to rent other land but had not been able to do so. He further testified as to the yields of the crops that were raised on the lands in question in 1941 and their value and as to the expense that would have been entailed in sowing, harvesting, threshing, and marketing the same. This evidence was offered and received over the objection of the defendants that the proper measure of damages was the difference between the rent reserved and the rental value of the lands at the time of the alleged breaches of contract and not the profits that the plaintiff might have realized had the leases not been cancelled, and that therefore the evidence thus offered was inadmissible. The objection was overruled and the evidence was received. The case was submitted to the jury on the plaintiff's theory and a verdict was returned for him.
The defendants at the close of the plaintiff's case, and again at the close of the whole case, moved for a directed verdict and subsequently for judgment notwithstanding the verdict or for a new trial. They predicated these motions largely on two grounds: First, that the plaintiff had failed to pay the rent for 1941 on or before January first of that year, and therefore, under *Page 54 
the terms of the leases they were at once and without further notice or demand terminated, and that there could be no waiver or modification effective in behalf of the plaintiff, otherwise than by the written consent of the defendant endorsed upon the leases; and, Second, that the evidence was insufficient to establish any proof of damage since the only damage the plaintiff could have suffered was the difference between the rent reserved and the rental value of the lands at the time of the alleged breach of the leases and no evidence to that effect was introduced.
If the defendants' first contention is correct and the leases were terminated by reason of the failure of the plaintiff to pay the rent on or before the first day of January 1941, as required by their provisions, we need not consider the question of damages raised by the several motions.
The words of the leases are clear and plain. There can be no mistaking their provisions. Time was to be of their essence. And the parties to a contract may properly stipulate that in such a case the failure to comply with the terms of the contract at the times named therein for performance will debar the person in default from claiming any rights thereunder. Fargusson v. Talcott, 7 N.D. 183, 73 N.W. 207. The rentals were required to be paid yearly in advance on or before the first of January of the respective years covered by the leases. They were not paid. The leases provided that in case their terms were not in all respects complied with at the times and in the manner specified they should, at the option of the lessor, terminate and no waiver of time or performance should be implied or alleged to excuse a failure unless such waiver was in writing, signed by the authorized agent of the lessor. They further provided that in order to enforce a forfeiture of nonpayment of rent when due no demand therefor and notice of cancellation on account of failure to pay should be required.
Plaintiff contends that there was a waiver by the defendants of the right to terminate the leases on account of default and delay in the payment of the rent; that notwithstanding the terms and conditions of the leases payment of the rent in the *Page 55 
amount stipulated therein on March 19 was timely under the circumstances; that the county treasurer was the agent of the land department to receive the rent; that he accepted it when it was tendered and issued his receipt therefor; that this was done at the direction of the land department and only because of that direction was the payment delayed.
It is true the provision making time of the essence of the leases could be waived. See, Fargusson v. Talcott (ND) supra. But can it be said that it was waived under the circumstances shown? Certainly there was no express waiver as provided might be had pursuant to the terms of the leases in that behalf. The plaintiff relies upon the fact that when he inquired the latter part of January regarding the payment of the rent the county treasurer told him that the time within which payment could be made had been extended; and that again, the latter part of February when he inquired the treasurer told him he had received notice from the land department that the time was further extended until the day before the next leasing and at that time gave to the plaintiff a copy of the letter written by the manager of the leasing department to that effect. But these extensions were purely matters of grace. They were not made to the individual tenants. They were directions given to the treasurer. They could be rescinded at any time and were not binding upon the land department unless in reliance upon them the tenants acted or failed to act to their detriment. When the plaintiff was first advised by the treasurer that the time of payment had been extended, he was already in default. He knew that the land department insisted that the amount of the rental stipulated in one of his leases was, through error and mistake, insufficient and that the deficiency must be made up. He had no reason to believe that the direction to extend the time of payment was intended for his benefit. Had he gone in person to the manager of the land department after the first of January there is little doubt but that his tender of payment would have been refused. He made no inquiry until he was nearly thirty days in default. He is in no position to say his delay in tendering or making payment was, in the first instance, *Page 56 
due to anything that was said or done by the land department or its agents. He knew the county treasurer was the agent to receive payment and for that purpose only. He knew the leases provided that no waiver with respect to time of payment was good unless in writing, signed by a duly authorized agent of the land department. He was not entitled to notice of termination of the leases on account of default in compliance with any of their terms. He suffered no prejudice by reason of the fact that he was not told that the leases had been terminated until the day when the auction for the 1941 leasing was held. He must have felt uncertain about the matter because he attended the leasing, apparently for the purpose of ascertaining whether or not the lands covered by his leases were to be offered at the auction. When he was advised that they were to be he protested. When he was told his leases were cancelled, he left the sale. He did not attempt to bid when the land was offered. The record does not disclose whether the tracts in question were among those listed in the notice required to be posted in the courthouse. Still it must be presumed that they were as the statute and the rules of the land department require them to be.
When the plaintiff was told on the day of the leasing that his contracts had been terminated because of failure to pay the rental as required, he left the sale. This was on the 21st of March. On the 28th of March the land department, having been advised that he had paid the rent to the county treasurer in the amount stipulated in the leases, directed the county treasurer to refund the moneys thus paid. The treasurer did this. Certainly there was no delay in the giving of this direction or in the making of the refund. The plaintiff, though protesting, accepted and kept the money thus tendered to him. He made no effort to retain possession of the premises or to enter upon them and use them. Of course, if his theory as to his rights and remedies was correct, he was, so to speak, "sitting pretty." He would be foolish indeed to do anything other than wait and watch. He could rest at ease and speculate without chance of loss. If the crops in 1941 and 1942 were profitable he could claim the amount of the profit. If they failed he would save his *Page 57 
rent, his seed, and his labor, and suffer no loss. He would be the winner whichever side of the coin came up on the toss. In the meantime, the leases to Hopchuck who had been the highest bidder at the sale had not been executed because the treasurer had accepted the money tendered by plaintiff in payment of his rent on March 19. However, after plaintiff in turn accepted and kept the amount of the rental paid by him when it was refunded by the county treasurer, the leases were executed to Hopchuck.
Considering all the circumstances we are of the opinion the plaintiff defaulted in payment of the rents when they fell due under the terms of his leases and that there was no waiver on the part of the land department of its right to terminate them. Accordingly the defendants' notice of cancellation and termination on account of the default was timely and there was no breach of the lease contracts. In any event, plaintiff acquiesced in the action of the department in cancelling and terminating the leases. For, though verbally protesting, he accepted the money paid by him when it was tendered back by the county treasurer and kept it. He surrendered possession of the lands and made no effort to occupy and use them. The motion for judgment notwithstanding the verdict should have been granted.
The judgment is reversed and the case remanded for disposition in accordance with this opinion.
CHRISTIANSON, Ch. J., and MORRIS, J., concur.