Leonard P. NELSON and Mathilda Nelson, copartners, d/b/a Nelson Grain Company, Plaintiffs and Appellees,

v.

Otis GLASOE, Defendant and Appellant.

Civ. No. 9091.

Supreme Court of North Dakota.

June 24, 1975.

Bjella & Jestrab, Williston, for plaintiffs and appellees, argued by Frank F. Jestrab, Williston.

McIntee & Whisenand, Williston, for defendant and appellant, argued by Frederick E. Whisenand, Jr., Williston.

VOGEL, Judge.

This is an appeal from a judgment granting to the plaintiff grain elevator operator (buyer) liquidated damages for nondelivery of grain under a written contract with the defendant farmer (seller).

The contract was executed and dated December 7, 1972. It called for the delivery of 9,000 bushels of spring wheat between April 1, 1973, and June 30, 1973, with the exact delivery date to be selected by the buyer, with at least two days' notice to be given to the seller. It further provided:

"If Buyer's elevator or other storage facilities at delivery point are for any reason unable to receive said grain on the final delivery date above specified, said date may be extended, at Buyer's option, for not more than sixty (60) days."

The 60-day extension expired August 29, 1973. The buyer demanded delivery on September 4, 1973, and the seller refused to deliver.

Another contract between the same parties, executed on the same day, called for the delivery of 10,000 bushels of amber durum at a price of $1.91 per bushel. The provisions of the durum contract were otherwise identical with the spring wheat contract. Delivery was made of the durum which was the subject of the second contract. The second contract is important to this action only to the extent that the acts of the parties in performing it illuminate the intentions and actions of the parties as to the spring wheat contract.

It is the contention of the seller that the wheat contract was breached by the buyer by failing to call for delivery within the period specified by the contract, and that the seller was excused from compliance by the failure of the buyer to call for delivery earlier. The seller sold the grain on or about September 9 to a different buyer at a large profit, the price of wheat having more than doubled between December 7, 1972, the date of the contract, and August 29, 1973, the date when the 60-day extension of the original final delivery date contemplated by the contract expired.

The buyer contends that he was within his rights in first calling for delivery of the grain on September 4, 1973, for several reasons: (1) that the dealings between the parties show that the delay was for the benefit of the seller and that the parties impliedly agreed to a delivery date later than August 29; (2) that there was a custom in the community and in the grain business that actual delivery dates were subsequently agreed upon by the parties irrespective of the provisions of written contracts; (3) that the delay was inconsequential and immaterial to both buyer and seller, and the contract was substantially complied with by the call for delivery six days after the term of the contract expired; and (4) that the seller had a duty to deliver the grain within the contract period, regardless of whether notice was given by the buyer to make delivery.

The seller asserts that time was of the essence of the contract, not by its terms but by statute and decisional law, and that there was neither custom nor agreement to justify the extension of time.

The testimony of the parties, including the seller's wife, indicates that the seller and his wife entered into the contract for specific reasons: to assure a market and delivery out of their bins of 1972 grain before the 1973 harvest[1] and to assure receipt of a price which was satisfactory at the time of the execution of the contract.

1. The evidence shows, and it is common knowledge, that country grain elevators in North Dakota were generally full and railroad cars were scarce in the fall of 1973, so that it was often impossible to sell grain when desired. To have an assured sale, with assured future delivery out of farm storage, was therefore of some value at that time.

They accomplished these aims. After delivery of the 10,000 bushels under the durum contract, the storage space on the seller's farm, which had been filled by spring wheat and durum, became adequate to hold the 1973 crop. There was a conversation between the parties, after the delivery of the durum, in which the buyer asked the seller if the delivery of the durum "took care of him" and the seller replied that it did. The parties testified that they understood this conversation to mean that the seller now had capacity to store his 1973 harvest on his own farm.

The durum delivery was completed in July and August, and the 1973 harvest was commenced in mid-August and completed about August 28 or 29. Thus the seller had room to store his 1973 harvest and was under no pressure due to lack of space to find either storage or a market for it. He frankly testified that from the standpoint of his personal convenience it made no difference to him whether he delivered during the week of the 20th of August or the week of September 4.

■ We hold that the trial court was well within its discretion in finding as facts that the conversation between the parties outlined above meant that defendant now would have adequate storage for his new crop; that the parties did not regard time as of the essence of the contract; that the defendant was not prejudiced and it was completely immaterial to him that the buyer called for delivery on September 4 rather than prior to August 29; and that the seller is estopped to claim a breach of contract by the buyer in failing to call for delivery on or prior to August 29, 1973. See *Hutton v. Korynta*, 218 N.W.2d 177 (N.D.1974).

Since we have found no error in the factual findings of the trial court described above, and they are sufficient to dispose of the appeal, we need not decide whether the contract required the seller or the buyer to take the initiative in instigating the process of delivery.

Similarly, we need not decide whether there was a custom of agreeing upon delivery dates regardless of the provisions of written contracts, or the effect of such a custom if it existed.

We agree with the trial court that there was no agreement between the parties that time should be of the essence of the contract. Section 9–07–23, N.D.C.C., provides:

"Time is of the essence of a contract if it is provided expressly by the terms of the contract or if such was the intention of the parties as disclosed thereby."

■ The trial court found, and we agree, that the parties did not contract that time was of the essence. Certainly there is no such provision in the contract, nor does the contract disclose that they intended to so agree. Even if they had so agreed, such provisions can be waived. *Fargusson v. Talcott*, 7 N.D. 183, 73 N.W. 207 (1897); *Koller v. State*, 74 N.D. 46, 19 N.W.2d 822 (1945).

■ The seller also raises as a defense the statute of frauds, and alleges that the statute prohibits the oral modification of a written contract. Either an executed oral modification [Section 9–09–06, N.D.C.C.] or estoppel [*Dangerfield v. Markel*, 222 N.W.2d 373, 378 (N.D.1974)] is sufficient to remove the bar of the statute of frauds. As stated above, we agree with the finding of the trial court that an estoppel was created. Therefore, we need not consider whether there was an executed oral modification of the contract.

We affirm the judgment in favor of the buyer.

ERICKSTAD, C. J., and PAULSON, PEDERSON and SAND, JJ., concur.