**TOWER CITY GRAIN COMPANY, a corporation, Plaintiff-Appellee,**

v.

**E. W. RICHMAN, et al., Defendants-Appellants.**

**Civ. No. 9102.**

Supreme Court of North Dakota.

July 11, 1975.

Kruger, Yuill & Feder, Fargo, for defendants-appellants; argued by William D. Yuill, Fargo.

Ployhar, Thorson & Weisenburger, Valley City, for plaintiff-appellee; argued by Roger R. Weisenburger, Valley City.

PEDERSON, Judge.

## CASE SUMMARY

This is an appeal by the defendants, E. W. Richman, Peter Richman, and Kenneth Richman, doing business as E. W. Richman & Sons, from a judgment of the district court of Barnes County ordering the specific performance of a contract for the sale of grain to the plaintiff, Tower City Grain Company. The Richmans appeal from the entire judgment.

Motion to file bond for costs on appeal is granted.

Judgment reversed.

## FACTS

The Richmans entered into an oral contract to sell 10,000 bushels of 58-pound test weight wheat to Tower City Grain. The terms of the contract are in dispute. The Richmans contend that the sale price was to be $2.24 per bushel and that the contract was entered into on or about December 15, 1972. Tower City Grain contends that the sale price was $2.25 per bushel and that the date of the contract was January 2, 1973, the same date that the grain was resold to a third party. It is undisputed that there was no date set for the delivery of the grain. Delivery was to be made upon availability of storage or rail transportation.

This dispute centers around the date that Tower City Grain requested that the Richmans deliver the grain in fulfillment of the contract. The Richmans testified that they made repeated inquiries throughout the spring and summer of 1973 concerning the delivery of the grain. On each of these occasions, the Richmans were told either that they were next on the list or that the elevator was full and no boxcars were available for shipment.

The Richmans contend that Tower City Grain was accepting grain deliveries from other farmers during this time period. Tower City Grain argues that the grain accepted was for resale as seed or to fill contracts that had been entered into prior to the contract with the Richmans.

Tower City Grain pointed out that this method of buying grain had been its custom for almost forty years. It did agree, however, that the time lag between the date of the contract and the date it called for delivery was unusual, but noted that in times of boxcar shortages such delays did occur. The Richmans admitted that they had been doing business with Tower City Grain for over thirty years and that this was the customary transaction between the parties, but also stated that they had never waited for such a long time to deliver their grain. Tower City Grain alleges that the Richmans were asked to deliver the grain on July 17, 1973. The Richmans contend that the actual date was much later than July 17, possibly not until September of 1973.

The Richmans refused to deliver the 10,000 bushels of wheat to Tower City Grain because the delay in calling for delivery of

the grain constituted a breach of the contract. Tower City Grain then brought this action for specific performance of the oral contract. At the conclusion of the evidentiary portion of the trial, the court allowed the Richmans forty-five days to brief the issues. The brief was not submitted.

On September 27, 1974, the court rendered a memorandum decision. In its findings of fact, the trial court found that on or about January 2, 1973, the parties entered into an oral agreement to sell 10,000 bushels of 58-pound test weight wheat for $2.25 per bushel, that delivery was to be made upon availability of storage and/or rail transportation, and that this course of dealing and usage of trade was customary in the business of both parties. The court further found that in reliance upon the oral contract Tower City Grain entered into an agreement to sell the wheat to a third party and that the Richmans still retained the 10,000 bushels of wheat.

The trial court then ordered judgment in favor of Tower City Grain granting specific performance of the contract.

### ISSUES

1. Is the finding of fact establishing the terms of the oral contract from the testimony of Tower City Grain rather than that of the Richmans clearly erroneous?

2. Did the trial court abuse its discretion in ordering specific performance of the oral contract?

### DECISION

Although no formal motion was made before this court, Tower City Grain asked that this appeal be dismissed because the Richmans had not filed a bond for costs on appeal pursuant to Rule 7, N.D.R.App.P. On June 4, 1975, this court received a copy of a letter from the Richmans' counsel stating that a cashier's check for $250.00 had been sent to the clerk of the Barnes County District Court. On oral argument, counsel for the Richmans moved this court to grant him permission to file the check.

■ Tower City Grain argues that the service of an undertaking on appeal or deposit in lieu thereof is jurisdictional and that the appeal should be dismissed. We do not agree. Good faith service of notice of appeal confers jurisdiction, and thereafter this court may permit the appeal to be perfected. In re Guardianship of Frank, 128 N.W.2d 355 (N.D.1964). Further, Rule 3(a), N.D.R.App.P., states that the "failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court deems appropriate, which may include dismissal of the appeal."

■ Because it is the preference of this court to decide cases on their merits rather than on technicalities, we grant the Richmans' motion to perfect the appeal. As we have stated before, the lack of adherence to the rules promulgated by the court can result in a dismissal of an appeal under Rule 3(a), N.D.R.App.P. This result would be appropriate in the instant case where there is an obvious lack of diligence on the part of counsel for the Richmans. Counsel failed to file appropriate briefs at both the trial and appellate levels. Such failure prompted this court to issue a Minute Order on March 31, 1975, dismissing the Richmans' appeal if a brief was not filed by April 18, 1975. It was filed by that date. We do not condone such laxity on the part of attorneys who practice before us but such a drastic measure as dismissal of an appeal would unduly penalize the appellants for failure of their attorney to fulfill his duties.

### I.

The Richmans contend that the trial court erred in placing total reliance on the testimony of officers of Tower City Grain to establish the terms of the contract. In presenting his case to the trial court, counsel for Tower City Grain began by calling the Richmans for cross-examination under

Rule 43(b), N.D.R.Civ.P. During this cross-examination, the witnesses testified as to what they considered to be the terms of the contract.

Citing *Dangerfield v. Markel,* 222 N.W.2d 373 (N.D.1974), as their authority, the Richmans argue that by establishing the existence of a contract by testimony of the adverse parties, Tower City Grain could not contradict or supplement such evidence by the testimony of other witnesses. The *Dangerfield* case, however, is distinguishable from the instant case in that the existence of a contract for the sale of potatoes was a central issue. In the case before us, there is no issue as to the existence of a contract. In their answer to the complaint of Tower City Grain, the Richmans admit the existence of a contract.

 Any attempt to bind one party by the testimony of his opponents would be contrary to the intent of Rule 43(b), N.D.R. Civ.P. In construing Rule 43(b) of the Federal Rules of Civil Procedure, which is substantially the same as our rule, an adverse party may be called to the stand and interrogated by leading questions, contradicted and impeached. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2413 (1971); *Nuelsen v. Sorensen,* 293 F.2d 454 (9th Cir. 1961). Further, a party who calls an adverse party to the stand (usually cross-examination, as permitted) is in no way bound by the opponent's testimony.[1] *Moran v. Pittsburgh-Des Moines Steel Co.,* 183 F.2d 467 (3d Cir. 1950). See also the comments about the "voucher rule" in *State v. Hilling,* 219 N.W.2d 164, 172 (N.D.1974).

Based upon the testimony presented by Tower City Grain, the trial court made the following finding of fact:

"IV.

"That on or about January 2, 1973, the defendants did agree to sell to the plaintiff and plaintiff agreed to buy from the defendants 10,000 bushels of wheat at the price of $2.25 per bushel; that said wheat was to be of 58 pound test weight; that delivery of said 10,000 bushels of wheat was to be made to the plaintiff upon the availability of storage, and/or rail transportation at the plaintiff's place of business; and that this course of dealing and usage of trade was customary in both the defendants' and plaintiff's businesses."

 Our scope of review of the findings of fact made by the trial court is limited to a determination of whether or not such findings are clearly erroneous. Rule 52(a), N.D.R.Civ.P. Unless clearly erroneous, the findings of fact of the court, sitting without a jury, are binding on appeal. *Nitschke v. Barnick,* 226 N.W.2d 785 (N.D.1975), at syllabus 2. Further, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Sand v. Red River Nat. Bank & Trust Company,* 224 N.W.2d 375 (N.D.1974).

 This court must give great weight to the findings made and the inferences drawn by the trial court and will set aside a finding of fact only if, based upon all the evidence, it is clearly erroneous. *Rolfstad, Winkjer, Suess, McKennett & Kaiser v. Hanson,* 221 N.W.2d 734 (N.D.1974).

 We hold that there is substantial evidence to support the trial court's finding as to the terms of the contract, and that the finding is not clearly erroneous. Such finding is conclusive on appeal.

## II.

This issue actually raises two questions: (1) Is the remedy of specific performance applicable, and (2) Did the trial court abuse its discretion in granting specific performance of the contract for the sale of grain?

---

**1.** *As a matter of interest see Rule 607, Federal Rules of Evidence.*

*Rule 607. Who May Impeach. The credibility of a witness may be attacked by any party, including the party calling him. Public Law 93–595, 93rd Congress, effective July 1, 1975, 28 U.S.C.A.*

■ Although the Richmans cited several sections of the Century Code pertaining to specific relief, § 41–02–95, N.D.C.C. (§ 2–716 of the Uniform Commercial Code), is controlling in the instant case and states, in part:

"1. Specific performance may be decreed where the goods are unique *or in other proper circumstances.*

"2. The decree for specific performance may include such terms and conditions as to payment of the price, damages, *or other relief as the court may deem just.*" [Emphasis added.]

While the Richmans' contention that fungible goods were not a proper subject for the remedy of specific relief under prior laws is correct, the adoption of the Uniform Commercial Code in 1966 liberalized the discretion of the trial court to grant specific performance in a greater number of situations. The Official Comment to § 2–716, U.C.C., provides in pertinent part:

"1. The present section continues in general prior policy as to specific performance and injunction against breach. However, without intending to impair in any way the exercise of the court's sound discretion in the matter, this Article seeks to further a more liberal attitude than some courts have shown in connection with the specific performance of contracts of sale.

"2. In view of this Article's emphasis on the commercial feasibility of replacement, a new concept of what are 'unique' goods is introduced under this section. Specific performance is no longer limited to goods which are already specific or ascertained at the time of contracting. The test of uniqueness under this section must be made in terms of the total situation which characterizes the contract." 1 Uniform Laws Annotated, Uniform Commercial Code, § 2–716 (Master Edition 1968).

■ In addition, § 41–01–06 (1–106), N.D.C.C., states that "the remedies provided by this title shall be liberally adminis-

tered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * *." We cannot presume that an award of damages fails to put an aggrieved party in as good a position as if the other party had fully performed. There was no finding or conclusion to that effect by the trial court in this case.

■ A complaint which prays for the equitable remedy of specific performance must clearly show that the legal remedy of damages is inadequate. A defendant should not be deprived of a jury trial, to which he would be entitled in an action at law, unless the plaintiff is clearly entitled to the equitable remedy he seeks.

Historically, specific performance, which is an equitable remedy, was applied primarily to contracts relating to goods which were "unique." All real estate was deemed to be unique, and so were goods which had sentimental value as distinguished from market value. Another basis for invoking specific performance was the inadequacy of the remedy at law.

■ A factual basis for a conclusion that the remedy of specific performance is available, should be found by the trier of facts in order that this court, on appeal, may know the basis upon which it arrived at such conclusion. See *Ellendale Farmers Union Cooperative Ass'n v. Davis,* 219 N.W.2d 829, 836 (N.D.1974); *DeForest v. DeForest,* 228 N.W.2d 919, 924 (N.D.1975).

■ There is no finding by the trial court in this case that indicates what it believed to be the proper circumstances. Our examination of the record discloses no evidence upon which such finding could be based. The fact that the complaint prayed for specific performance and that the Richmans have in their possession the type and quantity of wheat called for in the contract are not adequate to support such finding.

"The buyer may obtain specific performance of the contract for sale when

the goods are unique or other proper circumstances are shown. Because the purpose of the section is to liberalize the right to specific performance, it would appear that it is not to be of great significance whether a given situation is regarded as involving 'unique goods' or 'proper circumstances'; ordinarily, circumstances which are proper will impart uniqueness to the goods. Uniqueness in a reasonable commercial setting is the significant point." 2 Anderson, Uniform Commercial Code, § 2–716:5, at 488 (Second Edition 1971).

 Without holding that specific performance can never be invoked to enforce a contract for grain or other fungible goods, we conclude that it was a manifest abuse of discretion and an error as a matter of law for the trial court to grant such remedy under the circumstances of this case. Other issues raised and argued need not be considered for the disposition of this case.

Motion to file bond for costs on appeal is granted.

Judgment is reversed and remanded with leave to amend.

VOGEL, Acting C. J., SAND, J., and A. C. BAKKEN and WILLIAM BEEDE, District Judges, concur.

ERICKSTAD, C. J., and PAULSON, J., deeming themselves disqualified did not participate; the Honorable A. C. BAKKEN, Judge of the First Judicial District, and the Honorable WILLIAM BEEDE, Judge of the Fifth Judicial District, sitting.