**FARMERS UNION GRAIN TERMINAL ASSOCIATION, Appellant,**

v.

**Keith HERMANSON and Gordon McEvers, Appellees.**

**No. 76–1372.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1977.

Decided Feb. 24, 1977.

Herbert L. Meschke, Minot, N. D., on brief for appellant.

Robert W. Palda, Jr., Minot, N. D., on brief for appellees.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, District Judge.*

BRIGHT, Circuit Judge.

The parties to this appeal entered into grain sales contracts specifying certain delivery periods, but not providing that time was "of the essence." We are presented with the question of whether the appellee grain sellers (Keith Hermanson and Gordon McEvers, farming partners) may cancel the contracts without notice because the appellant grain buyer (Farmers Union Grain Terminal Association) refused to accept delivery of the grain within a reasonable period of time. The district court (Judge Bruce M. VanSickle) held the sellers were entitled to cancel and dismissed the buyer's suit for breach of contract. These contracts are governed by provisions of the Uniform Commercial Code, as adopted in North Dakota. We affirm that dismissal for reasons set forth in this opinion.

I.

The facts found by the district court stand essentially unchallenged on this appeal. In late 1972, the grain buyer, at its Lignite, North Dakota, elevator, entered into five separate grain purchase contracts with the grain sellers. The contracts called for delivery at the Lignite elevator of a total of 99,000 bushels of grain (wheat and durum) at certain dates through April 30, 1973, at a contract price of $2.05 per bushel for all grain except 19,000 bushels called for by the contract executed November 6, 1972, which stipulated a price of $1.80 per bushel. The contracts specified periods of time for delivery as follows:

| Contract No. | Date of Execution | Contracted Delivery Dates |
|---|---|---|
| 5039013 | 11/6/72 | Apr. 1 thru 30, 1973 |
| 5042109 & 5042111 | 12/18/72 | Mar. 1 thru 31, 1973 |
| 5042110 | 12/18/72 | Apr. 1 thru 30, 1973 |
| 5042112 | 12/18/72 | Dec. 18 thru 31, 1972 |

(The contracts each characterize the last date for contract delivery as the "Expiration Date".)

The grain sellers made deliveries of more than 24,000 bushels of grain against these contracts through March 30, 1973. These deliveries substantially satisfied the obligation to deliver the December grain and satisfied almost 60 percent of the requirement for grain to be delivered in March. From March 30, 1973—the date of the last actual delivery under the contracts—until the end of July 1973, grain sellers repeatedly asked Mr. Hill, the elevator manager, when they could make the remaining deliveries under the contracts. Repeatedly, Hill gave them the same response—that he would let them know when they could make their deliveries.

Finally, on August 1, 1973, the farmers, after consulting an attorney, wrote the grain buyer at its St. Paul office: "You are hereby notified that do [sic] to your breach of grain contracts, we have declared these contracts terminated: [identifying the pertinent contracts in question by number, date, quantity and delivery date]." Although the letter recited "termination," the parties and the district court recognized the letter as a cancellation of the agreement.

---

* WILLIAM C. HANSON, Chief Judge, United States District Court, Southern District of Iowa, sitting by designation.

Each contract contained the following provisions material to· this lawsuit:

Buyer shall not be liable in any respect for failure or delay in the fulfillment or performance of this contract if hindered or prevented directly or indirectly by Acts of God, freight embargoes, or other causes reasonably beyond the control of Buyer.

If any part of this contract remains unfilled at Expiration Date, Buyer reserves the right, without further notice to Seller, to extend the time of delivery or to declare Seller in default of the unfilled portion of the contract. In the event of default on the part of Seller, Seller agrees to pay to Buyer, as liquidated damages, any loss resulting from the difference between the contract price herein and the market price of grain of like grade at the close of the market on the Expiration Date.

We herein refer to the second paragraph quoted above as an "extension clause."

The district court discussed the buyer's contention that an existing boxcar shortage excused buyer's failure to accept delivery of the grain on prescribed delivery dates or reasonably thereafter and found buyer's delay to be unreasonable.

Sellers claim that Buyer first breached the respective contracts by failing to accept deliveries at the Lignite elevator within the respective contractually prescribed delivery dates—or reasonable times thereafter. Buyer. denies that it first breached the respective contracts, claiming that boxcar shortages, well known to Sellers and reasonably beyond the control of Buyer, prevented Buyer from transporting its grain to market. Thus, due to a lack of storage space, Buyer claims it was precluded from accepting further deliveries from Sellers through July of 1973.

\* \* \* \* \* \*

Did the Buyer unreasonably delay in accepting grain under the contracts involved in this action?

First of all, under the respective contracts, the risk of any loss of, or damage to, undelivered grain remained with the Sellers.

Secondly, on cross-examination, Mr. Hill admitted that during the months of May—July, 1973, he accepted for delivery a total of over 69,000 bushels of grain under contracts whose delivery dates were after April 30, 1973. In addition, cash purchases of grain by the elevator from January—July of 1973 were in excess of 39,000 bushels, and amounted to more than 22,000 bushels in June alone. In explaining his actions, Mr. Hill said that he was trying to be fair to all his customers and made his decisions as to what grain to accept for delivery without looking back to the contracts.

Thirdly, although Mr. Hill claimed to have made a reasonable effort to arrange for trucks—in addition to boxcars—to transport the elevator's grain to market, this claim was undercut by the testimony of Mr. Johnson, Hill's successor as elevator manager. Johnson took over from Hill in August of 1973 and was successful in obtaining 28 trucks in that month alone, equaling the number Hill had obtained for the whole previous 7 months.

The district court concluded:

Since Buyer unreasonably delayed in accepting deliveries under the contracts, and since such delays were not the result of "causes reasonably beyond the control of Buyer," Buyer breached the contracts by not calling for deliveries prior to August 1, 1973. Thus, Sellers were within their rights under N.D.C.C. § 41–02–82(6) in cancelling the contracts and selling their grain in the open market.

Appellant grain buyer contends here as it did in the district court that the elevator extended the March and April delivery dates for grain to an indefinite time pursuant to the extension clause in these contracts and, therefore, in the absence of notification of termination under UCC § 2–309 (N.D.Cent.Code § 41–02–26), the farmers, not the elevator, breached the contract. The district court rejected this contention on the assumption that the duration of any extension under the contracts lasted only

for a reasonable time, that a reasonable time had expired by August 1, 1973, and, therefore, the sellers lawfully could cancel the contract.

We agree with the conclusion that sellers lawfully cancelled, but do not wholly endorse the district court's rationale.

II.

We discuss the text, comments, and purpose of the Code provision which appellant seeks to apply to the foregoing fact situation.

UCC § 2–309 (N.D.Cent.Code § 41–02–26) provides:

> (1) The time for shipment or delivery or any other action under a contract if not provided in this Article or agreed upon shall be a reasonable time.
>
>     \*      \*      \*      \*      \*      \*
>
> (3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

■ UCC § 2–309, Comment 1, reproduced in the margin,[1] indicates that subsection (1) has no application where time for action is "agreed." Thus, contracts with stipulated delivery times, apart from any consideration of extension clauses or other contract provisions which may render delivery times indefinite, do not fall within subsection (1) of § 2–309. The buyer here cannot rely on the "Acts of God" or "causes reasonably beyond the control of Buyer" clauses of the contracts, for the district court's findings demonstrate that the delay did not rest on causes reasonably beyond the elevator's control.

Appellant asserts, however, that the terms of the extension clause converted the otherwise agreed upon time terms into a contract indefinite in time. Furthermore, according to appellant, since the contract had been extended, UCC § 2–309(3) required the sellers to notify buyer prior to "termination." UCC § 2–309, Comment 3, explains the underlying basis for the notice requirement:

> 3. The facts in regard to shipment and delivery differ so widely as to make detailed provision for them in the text of this Article impracticable. The applicable principles, however, make it clear that surprise is to be avoided, good faith judgment is to be protected, and notice or negotiation to reduce the uncertainty to certainty is to be favored.

Without the notice requirement contained in § 2–309, or negotiation as suggested in Comment 3, continued uncertainty concerning performance exists, unfortunately all too often to be resolved by litigation.

■ However, contrary to appellant's contention and the district court's apparent assumption that the extension clause had become operative, an examination of that clause within the context of the contract demonstrates its inapplicability. The entire clause, which we reiterate below, concerns only the buyer's remedies on the *seller's default* in delivery under the contract's time terms:

> If any part of this contract remains unfilled at Expiration Date, Buyer reserves the right, without further notice to Seller, to extend the time of delivery or to declare Seller in default of the unfilled portion of the contract. In the event of default on the part of Seller, Seller agrees to pay to Buyer, as liquidated damages, any loss resulting from the dif-

---

1.    Subsection (1) requires that all actions taken under a sales contract must be taken within a reasonable time where no time has been agreed upon. The reasonable time under this provision turns on the criteria as to "reasonable time" and on good faith and commercial standards set forth in Sections 1–203, 1–204 and 2–103. It thus depends upon what constitutes acceptable commercial conduct in view of the nature, purpose and circumstances of the action to be taken. Agreement as to a definite time, however, may be found in a term implied from the contractual circumstances, usage of trade or course of dealing or performance as well as in an express term. Such cases fall outside of this subsection since in them the time for action is "agreed" by usage.

**1182**

ference between the contract price herein and the market price of grain of like grade at the close of the market on the Expiration Date.

Read in context of the whole paragraph, the phrase—"If any part of this contract remains unfilled at Expiration Date, Buyer reserves the right, * * * "—refers to buyer's choice of remedies when the seller has failed to perform. The buyer may (1) extend the contract, or (2) declare seller in default and in that event, recover from seller liquidated damages.

In the absence of seller's default, as in this case, buyer reserved no right to extend the contract terms under this clause. *Cf. Bunge Corporation v. Recker,* 519 F.2d 449 (8th Cir. 1975) (buyer extended pursuant to contract clause when seller failed to deliver); *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975) (buyer reserved right to liquidated damages, but not right to extend on seller's default); *Nelson v. Glasoe,* 231 N.W.2d 766 (N.D.1975) (buyer reserved right to extend contract if "unable to receive grain on final delivery date * * ").

UCC § 2–309, Comment 5, does indicate that a contract definite in time may be made indefinite by waiver and thus come within the requirements of that section:

5. The obligation of good faith under this Act requires reasonable notification before a contract may be treated as breached because a reasonable time for delivery or demand has expired. This operates both in the case of a contract originally indefinite as to time and of one subsequently made indefinite by waiver.

However, the issue of waiver was not tendered by the pleadings nor presented in district court. Our review of the evidence indicates that prior to August 1, 1973, sellers asked frequently when deliveries could be made and received responses that they should wait. That evidence alone would not establish waiver.

Though we cannot agree with the contention that the delivery periods were extended by operation of the extension clause, and find no basis to support extension by waiver, the trial court's discussion of unreasonable delay remains relevant to the question of the buyer's right to cancel the contract. Generally speaking, the North Dakota Supreme Court has found that time is not necessarily of the essence in grain and cattle sales contracts with specified delivery times, in the absence of an express statement that time is of the essence or unless there are special circumstances. *See Ziebarth v. Kalenze,* 238 N.W.2d 261 (N.D.1976); *Nelson v. Glasoe,* 231 N.W.2d 766 (N.D.1975); *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D. 1975); *cf. Mott Equity Elevator v. Svihovec,* 236 N.W.2d 900 (N.D.1975) (special circumstances). Where time is not of the essence, a reasonable delay in delivery or acceptance of the grain does not constitute a breach of contract. *See Nelson v. Glasoe, supra; Farmers Elevator Company v. David, supra,* and *Tower City Grain Co. v. Richman,* 232 N.W.2d 61 (N.D.1975). Unreasonable delay, however, constitutes a breach and justifies the remedy of cancellation. *Ziebarth v. Kalenze,* 238 N.W.2d 261, 269 (N.D.1976).

The reasonable delay allowed by North Dakota law in cases where a delivery period is specified, but time is not of the essence, should not be confused with the "reasonable time" allowed for performance under UCC § 2–309. UCC § 2–309 is not addressed to "delay" in performance of contracts when time is specified but is not of the essence.[2] UCC § 2–309(1) applies where the time for shipment or delivery is not specified by the parties or, if initially specified, has become indefinite by application of other provisions of the contract, by waiver or by modification. In such cases, neither party may cancel the contract for delay in performance without notice, but may termi-

---

**2.** *See, e. g., Nelson v. Glasoe,* 231 N.W.2d 766 (N.D.1975). There, the buyer-elevator delayed calling for grain delivery for six days beyond date specified in contract as extended. As time

was not of the essence, buyer's delay did not constitute breach but seller's refusal to deliver did breach the agreement.

nate on reasonable notice pursuant to UCC § 2–309(3).[3]

 On the other hand, where delivery time is specified, but time is not of the essence, the party who does not perform or tender performance within the contract period assumes the risk of being declared in default for unreasonable delay, giving rise to a remedy of cancellation without notice by the other party to the contract.[4]

 Here, the district court determined that the grain elevator-buyer had delayed acceptance of the grain for an unreasonable period of time, three months following the last delivery date set forth in any of the grain sale contracts, and correctly ruled that the grain buyer had breached the contracts. The sellers justifiably cancelled the contract.

The judgment dismissing the buyer's suit is affirmed.

**3.** The North Dakota Supreme Court has discussed extension of specified time for delivery of grain through waiver. *See, e. g., Mott Equity Elevator v. Svihovec,* 236 N.W.2d 900, 905–09 (N.D.1975). However, that court has not expressly recognized the concept enunciated in UCC § 2–309, Comment 5: When definite delivery time becomes indefinite through waiver, a party desiring to close out its contract obliga-

tion must give "reasonable notification" rather than cancel without notice.

**4.** UCC § 2–309, Comment 9, explains that where breach has occurred, justifiable cancellation constitutes a remedy "and is not the kind of termination covered by the present subsection." *See Mott Equity Elevator v. Svihovec,* 236 N.W.2d 900, 909 (N.D.1975).