**TOWER CITY GRAIN COMPANY, a corporation, Plaintiff and Appellant,**

v.

**E. W. RICHMAN, Peter Richman, and Kenneth Richman, d/b/a E. W. Richman & Sons, Defendants and Appellees.**

**Civ. No. 9376.**

Supreme Court of North Dakota.

Jan. 24, 1978.

Roger R. Weisenburger of Ployhar, Thorson & Weisenburger, Valley City, for plaintiff and appellant.

William D. Yuill of Kruger, Yuill, Feder & Hovland, Fargo, for defendants and appellees.

VOGEL, Justice.

This case, involving an oral contract to sell 10,000 bushels of wheat, to be delivered when storage space or railroad transportation was available, is before us for the second time. See *Tower City Grain Co. v. Richman*, 232 N.W.2d 61 (N.D.1975). Upon retrial, after our remand to the district court with leave to amend, the district court found in favor of the Richmans. Tower City Grain Company appealed.

Pursuant to leave of this court, the pleadings were amended prior to the second trial, and the amended complaint sought damages rather than specific performance. Evidence fixing the date of the contract more precisely was received, and the court found the contract to have been entered into on December 29, 1972, rather than on January 2, 1973. It was on January 2, 1973, that Tower City entered into an option (hedge) on the Minneapolis Grain Exchange at a price of $2.43 per bushel. The court found that the Richmans requested Tower City to accept the grain in January, February, March, April, May, and June of 1973, that Tower City refused to accept the grain on each occasion, and not until July 17, 1973, and again in September, 1973, did Tower City offer to receive the grain. The Richmans refused to deliver at the later dates, claiming the contract had been breached by Tower City.

The trial court received evidence as to whether Tower City had received other grain contracted for on the same day as, or prior to, the contract with the Richmans, and found that the elevator had received much more than 10,000 bushels of such other contract grain. The court further found that Tower City refused within a reasonable time to accept the Richman grain and breached the contract.

The findings of fact were based upon more elaborate statements of the evidence in the memorandum opinion of the court, which included this statement:

"Here there was a delay by the plaintiff of approximately seven months in expressing an acceptance of delivery from the defendants, even though the plaintiff had accepted delivery of contracts of approximately the same date as that of the defendant or later in time because of the plaintiff's desire to protect itself, and also because the plaintiff was interested in its seed operation to 'make a few bucks'."

The statement as to the "plaintiff's desire to protect itself" refers to the admission by Tower City that it accepted delivery of some grain contracted for after the agreement with the Richmans in order to fulfill options it had entered into on the Minneapolis Grain Exchange, and the reference to the seed operation to "make a few bucks" relates to testimony that Tower City continued its practice of many years of receiving grain from farmers for cleaning and treating prior to spring planting and then delivering the cleaned and treated grain for planting purposes. The total of the latter transactions was about 40,000 bushels, but the evidence is not specific as to the amount of grain on hand at any given time in the seed operation.

Aside from the seed operation, the evidence clearly shows that Tower City accepted 10,000 bushels of grain from a Mr. Zaun, which had been contracted for on January 2, 1973, 6,000 bushels of grain from a Mr. Heimbach under a contract dated January 10, 1973, and 7,676 bushels of oats delivered by Mr. Zaun on a contract subsequent to that of the Richmans. The totals of these deliveries, of course, exceed the 10,000 bushels involved in the Richman contract, and fully justify the findings of fact made by the district court.

Tower City terminated its option (hedge) contract in late September by buying back the option (hedge) at a price of $4.77 per bushel.

Tower City contends that (1) the trial court erred in determining that Tower City Grain breached its agreement and thereby excused the Richmans from delivering the grain, and (2) that the trial court erred in not awarding damages to Tower City Grain Company.

This case is similar to other cases we have decided recently, all of which were apparently precipitated, at least in part, by the conditions existing during 1973 in this wheat-growing area, including a severe railroad boxcar shortage, coinciding with a sharply rising market price of grain and the recall by the Government of large quantities of wheat in storage. See *Mott Equity Elevator v. Svihovec*, 236 N.W.2d 900 (N.D. 1975); *Farmers Elevator Co. v. David*, 234 N.W.2d 26 (N.D.1975); *Sawyer Farmers Coop. Assn. v. Linke*, 231 N.W.2d 791 (N.D.

1975); *Nelson v. Glasoe,* 231 N.W.2d 766 (N.D.1975); *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975); *and Farmers Union Grain Terminal Assn. v. Nelson,* 223 N.W.2d 494 (N.D.1974). The present case is different, however, in that the contract in the present case was oral and contained no specific delivery date, but instead made delivery subject to the availability of railroad boxcars or elevator storage space.

Where time is not of the essence, reasonable delay in delivery or acceptance of the grain does not constitute a breach of contract. *Nelson v. Glasoe, supra; Farmers Elevator Co. v. David, supra.* Unreasonable delay, however, constitutes a breach and justifies the remedy of cancellation. *Mott Equity Elevator v. Svihovec, supra; Ziebarth v. Kalenze,* 238 N.W.2d 261 (N.D. 1976).

As we said in *Mott Equity, supra,* "What constitutes a reasonable time within the facts of a given case is a question of fact." 236 N.W.2d at 907. A review of the finding of the trial court that the delay was unreasonable is therefore governed by Rule 52(a), N.D.R.Civ.P. We find, upon review, that the trial court's finding of unreasonable delay not only is not clearly erroneous, but is clearly correct. There is no disagreement as to the terms of the contract. The contract was to accept delivery whenever railroad cars or elevator space permitted delivery. Instead of complying with the contract and accepting the Richman grain, Tower City chose to accept grain contracted for later, in order to fulfill option contracts of its own, without consulting those persons with whom it had contracted, and it chose to continue its seed-cleaning operations. The amount of grain received under subsequent contracts was more than twice the amount of the Richman contract, and in addition the seed-cleaning operation took some further, but unspecified, part of the capacity of the elevator.

In *Farmers Union Grain Terminal Assn. v. Nelson,* 223 N.W.2d 494 (N.D.1974), we approved the following jury instruction as accurately covering the law regarding time of performance and default:

"The Plaintiff is under a duty to exercise a reasonable amount of care and effort to provide space for [the farmer's] grain. In order to excuse the Plaintiff from accepting delivery on the date provided in the contract, the lack of available space must be beyond the power of the Plaintiff to prevent. You are instructed that whether the Plaintiff used a reasonable amount of care in providing available space for the grain is to be determined by you on the basis of all of the evidence in this case. If the Plaintiff failed to use said reasonable amount of care, then it cannot recover damages from the Defendant for failure to deliver the grain . . . ." 223 N.W.2d at 498–499.

The trial judge, as the trier of fact, reasonably found that the lack of available space was not beyond the power of Tower City Grain to prevent. By accepting much more grain from others, subsequently contracted for, instead of accepting the grain of the Richmans, the elevator breached its contract and excused performance by the Richmans.

Since we approve the finding of a breach of the contract by acceptance of other grain subsequently contracted for, we need not consider whether Tower City was required to provide substitute performance because of failure of the agreed manner of delivery. See Section 41–02–77, N.D.C.C. [U.C.C. § 2–614], and *Mott Equity Elevator v. Svihovec, supra.* If it were necessary to consider Section 41–02–77, N.D.C.C., it would be of no aid to Tower City, since the evidence discloses that no effort was made to move the grain by truck or to secure additional storage space and thereby assume the risk of loss or damage which, until delivery was accepted, remained on the Richmans.

We conclude that the trial court correctly found that Tower City Grain breached its agreement, that the Richmans were excused from performing, and that no damages were due to Tower City Grain from the Richmans.

Affirmed.

SAND, Acting C. J., PEDERSON, J., and BAKKEN and BEEDE, District Judges, concur.

ERICKSTAD, C. J., and PAULSON, J., disqualified; BAKKEN and BEEDE, District Judges, sitting in their stead.