In re EARLE INDUSTRIES, INC., Debtor.

EARLE INDUSTRIES, INC., Plaintiff,

v.

CIRCUIT ENGINEERING, INC., Defendant.

Bankruptcy No. 86–00869G.
Adv. No. 86–0382G.
Misc. No. 87–0598.
United States District Court,
E.D. Pennsylvania.
March 29, 1988.

Peter D. Bludman, Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., for debtor/plaintiff, Earle Industries, Inc.

Donald M. Collins, Nathalie D. Martin, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant, Circuit Engineering, Inc.

ORDER

CAHN, District Judge.

AND NOW, this 28 day of March, 1988, upon consideration of the Recommendation and Memorandum Opinion of the Bankruptcy Court, IT IS ORDERED that the findings of fact and conclusions of law submitted by the Bankruptcy Court are ADOPTED by the District Court.

JUDGMENT is ENTERED in favor of the plaintiff and against the defendant in the amount of $4000.00.

The Memorandum Opinion of the Bankruptcy Court is approved in its entirety, except as to footnote 3.

The clerk of this court is directed to close the docket of this case.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This is an adversary proceeding to determine plaintiff's right to collect "cancellation charges" of $4,000.00 based on defendant's cancellation of an alleged sales contract for failure to make timely delivery. The parties dispute whether a contract existed at all and if so, whether time of delivery was a material term of that contract. Because I have previously ruled that this adversary proceeding is non-core within the meaning of 28 U.S.C. § 157(c)(1),[1] I recommend the following Findings of Fact and Conclusions of Law for consideration by the District Court:

## FINDINGS OF FACT

1. Earle Industries, Inc. ("Earle") the debtor/plaintiff, is a Pennsylvania corporation which designs and produces technical equipment for use in construction.

2. Circuit Engineering, Inc. ("CE") is a Florida corporation which performs engineering work associated with construction projects.

3. In the middle of October, 1985, CE and Earle conducted preliminary discussions by telephone related to production by Earle of equipment necessary for a bridge project in which CE was involved.

4. Based on the discussions, Earle produced two diagrams of the proposed equipment which it forwarded to CE. Earle quoted CE a price of $17,800.00 and indicated that the equipment would take approximately ten weeks to produce.

5. On or about November 18, 1985, CE returned the diagrams to Earle with a letter to Earle president Bob Cragg which stated: "Please proceed with fabrication of this order at once. We need shipment ... in the first week of January, 1986. Let us

know if there is any problem with that delivery date." *See* Exhibit D–2.

6. At approximately the same time CE sent Earle a purchase order labeled Acknowledgement which set forth the $17,800.00 price which had been quoted to CE by Earle. A box on the purchase order labeled "delivery date" was left blank. *See* Exhibit D–1.

7. Although the purchase order is dated October 16, 1985, undisputed testimony of Earle's president, Bob Cragg, established that the purchase order was not received by Earle until after the letter requesting "fabrication." This testimony was supported by a notation on the purchase order which read "confirming to Bob Cragg".

8. Earle responded to the CE letter and purchase order with a form labelled "Acknowledgment" which again set forth the purchase price and which prominently featured a notation which indicated "To be shipped—end of January". Earle's acknowledgment also provided: "see attached Terms and Conditions of Sale". *See* Exhibit D–3.

9. The "Terms and Conditions of Sale" referred to in Earle's "Acknowledgment" stated *inter alia:*

GENERAL:

... We will use our best efforts to make delivery within the time specified, but it must be understood that causes beyond our control such as government priorities and allocations, difficulties in obtaining materials, strikes, accidents and default by subcontractors or suppliers may cause delay. We therefore cannot guarantee delivery as specified and your order will be accepted by us only on this condition.

LIABILITY

Orders are accepted by us under the condition that we are not to be liable for losses, detentions or delays occasioned by accident, strikes, fire affecting our operations or the operations of our suppliers or any other cases beyond our control and no damages for delay in delivery will be allowed.

---

1. *See In re Earle Industries, Inc.,* 72 B.R. 131    (Bankr.E.D.Pa., 1987).

**54**

CANCELLATION AND DEFERRED DELIVERIES

Orders placed cannot be cancelled ... except with our written consent and upon terms which shall indemnify us against all loss.

*See* Exhibit P-2.

10. Although no evidence was offered by either party regarding the reason for the delay in shipment, Earle was apparently unable to deliver the equipment by the end of January, 1986. Having not received delivery by January 31, 1986, CE sent Earle a letter cancelling its order. *See* Exhibit D-5.

11. Earle's president, Mr. Cragg, estimated that as of January 31, 1986, Earle had spent approximately $1,500.00 on materials and 155 hours of labor at $20.00 per hour on the project, for total expenditures of $4,600.00. Earle nevertheless billed CE in early February, 1986 for $4,000.00 in "cancellation charges", and seeks only $4,000.00 in its complaint. No other evidence of damages was presented by either party.

12. The equipment which was the subject of the contract was unique and could not be resold by Earle.

13. At trial, the parties agreed that the law of the Commonwealth of Pennsylvania applies to this dispute.

14. At trial, the only witness was Mr. Cragg. CE presented no witnesses and neither party presented any evidence as to a course of dealings between the parties or usages of trade as defined by 13 Pa.C.S.A. § 1205.

## CONCLUSIONS OF LAW

1. The law governing this case is the Uniform Commercial Code governing sales, as adopted in Pennsylvania, 13 Pa.C.S.A. § 2101 *et seq.*

2. During the oral communications of the parties commencing in October, 1985, Earle conveyed an offer to design and produce certain equipment for CE at a price of $17,800.00. In support of the offer Earle generated two diagrams of the equipment which were forwarded to CE for inspection.

No precise time of delivery was included as a component of the offer.

3. CE's letter dated November 18, 1985, (D-2), stating "Please proceed with fabrication of this order at once" together with its purchase order dated October 16, 1985, (D-1), constitute "a definite and seasonable expression" accepting Earle's offer within the meaning of 13 Pa.C.S.A. § 2207(a). By that acceptance, a contract was formed for sale of equipment at a $17,800.00 purchase price.

4. Since Earle's offer contained no precise time of delivery, CE's request for delivery "in the first week of January, 1986" constituted a proposal for an "additional term" within the meaning of 13 Pa.C.S.A. § 2207(b).

5. CE's proposal for a specific time of delivery did not become part of the contract by operation of 13 Pa.C.S.A. § 2207(b), because Earle timely notified CE that it objected to the inclusion in the contract of CE's proposed time of delivery. Earle's acknowledgment stating that the equipment would be shipped "end of January" and providing as a condition of sale that it could not guarantee time of delivery constituted a rejection of CE's proposal that the contract contain a specific time term.

6. No specific time of delivery ever became part of the contract between Earle and CE. In the absence of a specific time provision in a contract, 13 Pa.C.S.A. § 2309 requires that a reasonable time be implied. A reasonable time is to be inferred from the totality of the circumstances including conduct of the parties, course of dealing between the parties and trade usage.

7. In the absence of evidence of a course of dealing or trade usage, the only referent for determining a reasonable time for performance is the conduct of the parties. Where the parties conducted discussions which suggested that production time would be "approximately 10 weeks", approximately 10 weeks constitutes a reasonable time for performance.

8. Because CE did not insist on a specific time provision in the contract, sent a

purchase order which left the delivery date blank and failed to notify Earle that its refusal to guarantee a delivery date was unacceptable, Earle was not on notice that 10 weeks constituted an absolute deadline after which performance by Earle would be useless to CE. CE presented no evidence that it, in fact, did need the equipment by the end of January.

9. CE was not entitled to cancel the contract immediately upon expiration of 10 weeks from the date the contract was formed. CE thus breached the contract when it cancelled on January 31, 1986, which was virtually 10 weeks to the day from the date on which the contract was formed.

10. Since the plaintiff does not seek lost profits and the defendant does not dispute that $4,000.00 was expended by Earle prior to cancellation, plaintiff should be awarded $4,000.00 in contract damages because Earle's work product could not be resold to an alternative buyer.

## DISCUSSION

This is a proceeding in which the parties clearly reached an agreement constituting a contract, but where the time provision of the contract, despite discussions, was never formally established.

█In response to an oral offer and a transmittal of diagrams, on November 18, 1985, CE sent Earle a letter stating, "please proceed with fabrication of this order at once". On or about the same date CE sent Earle a purchase order indicating an agreed purchase price of $17,800.00. These documents, especially when taken together, constitute a definite and seasonable expression of acceptance within the meaning of 13 Pa.C.S.A. § 2207(a), which

operated to create an enforceable contract for the sale of equipment at a $17,800.00 purchase price. *See Reaction Molding Technologies, Inc. v. General Electric Co.,* 588 F.Supp. 1280 (E.D.Pa.1984). Nothing in the letter or purchase order made acceptance "expressly ... conditioned on assent to additional or different terms". 13 Pa.C.S.A. § 2207(a); *See Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir. 1972).

█ The issue then becomes the disposition of the proposed delivery date requested by CE in its November 18, 1985 letter. 13 Pa.C.S.A. § 2207(b) states that proposed additional terms in an acceptance:

... are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.[2]

In the case at bar, Earle notified CE within a matter of days that it objected to the delivery date in CE's acceptance by returning an acknowledgment which not only stated that the equipment would be shipped "end of January", but also provided that Earle could not guarantee a delivery date. Under 13 Pa.C.S.A. § 2207(b)(3), this objection prevented CE's proposed delivery date from becoming part of the contract.[3] *Reaction Molding,* 588 F.Supp. at 1289; *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* 460 F.Supp. 163 (E.D.Pa.1978). *See also* 13 Pa.C.S.A. § 2309, Comment 4.

2. Although I note that courts and commentators differ as to whether § 2–207 of the UCC applies to "different" as well as "additional" terms, *see Reaction Molding Technologies v. General Electric Co.,* 585 F.Supp. 1097, 1105 (E.D.Pa.1984), I find here that inclusion of a specific delivery date in CE's acceptance letter of November 18, 1987, constituted an additional term because Earle had not offered to complete the work by any particular date. Additional terms are clearly covered under UCC § 2–207(2).

3. Since the parties' offer and acceptance created a contract to which time was not of the essence, I find in the alternative, that CE's proposed delivery date materially altered the contract so as to be precluded from the contract by § 2207(b)(2). *See Galaxy International, Inc. v. White Stores, Inc.,* 88 F.R.D. 311 (W.D.Pa.1980).

Thus no deadline ever became part of the contract.[4] In such circumstances under 13 Pa.C.S.A. § 2309(a), a reasonable time for delivery must be implied. *See also* 13 Pa. C.S.A. § 1204. A reasonable time for delivery must be implied from the totality of the circumstances including trade usage, course of dealings and the conduct of the parties in the transaction at issue. *See* 13 Pa.C.S.A. § 1205. *See also R.L. Pohlman Co. v. Keystone Consolidated Industries, Inc.,* 399 F.Supp. 330 (E.D.Mo.1975).

■ Since no evidence was presented about a course of dealings between the parties or trade usage, I can only infer a reasonable time period from the conduct of the parties. The evidence, though thin, suggested that Earle believed production would take approximately 10 weeks. CE, by its conduct, appeared to accept this general time frame. CE presented no evidence at trial that it had informed or otherwise made known to Earle that ten weeks or any shorter period was an absolute deadline or that it had some urgent need for the equipment. Under these circumstance "approximately ten weeks" appears to be a reasonable time to apply to the contract.

Given the generally understood meaning of "approximately 10 weeks" CE was not entitled to cancel the contract on virtually the first day after ten weeks had expired. CE presented no evidence that it had any legitimate reason to expect performance no later than the end of January, 1986, or that it had communicated to Earle any such expectation at the time Earle rejected its proposed additional term.[5] CE's early cancellation thus constituted a breach of contract. *See Farmers Union Grain Terminal Ass'n. v. Hermanson,* 549 F.2d 1177 (8th Cir.1977).

Where a breach occurs, "contract law seeks to give the non-breaching party the benefit of his bargain, to put him in the position he would have been in had there been no breach." *Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095 (3rd Cir.1980) *cert. den.* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed. 2d 816 (1981). Where it is undisputed that the subject of a sales contract is unique so that it cannot reasonably be resold, the measure of damages for breach by the buyer would generally consist of lost profits, reasonable costs and incidental damages. *See* 13 Pa.C.S.A. § 2708. Because here no lost profits were pleaded or proved and because, in fact, the plaintiff testified that it incurred reasonable costs in excess of the $4,000.00 it seeks in its complaint, I recommend that the district court award the plaintiff damages in the amount of $4,000.00, the full measure of relief sought.

An appropriate order communicating this recommendation shall be entered.

Entered Nov. 24, 1987.

---

4. There is no evidence which indicates that CE accepted the "end of January" delivery date proposed by Earle. However, if it did accept that date contained in Earle' acknowledgment, it also accepted Earle's condition, stated in the acknowledgment, that the proposed delivery date could not be guaranteed. Thus even if I had found that the parties agreed that delivery was to have been made by the "end of January", CE was not justified in cancelling on January 31, 1985.

5. By failing to communicate to Earle that it was relying on a hard and fast deadline expiring at the end of January after Earle sent its acknowledgment refusing to guarantee a delivery date, CE, in effect, encouraged Earle to incur expenses associated with fabrication on an assumption that its good faith effort to deliver within a reasonable time would be acceptable. It would thus be manifestly unfair to have Earle rather than CE bear these costs.